Lorenzo PAYNE, Plaintiff-Appellant,

v.

T. W. WHITE and Clara B. White,
Defendants-Respondents.

No. 7420.

Springfield Court of Appeals.

Missouri.

Feb. 29, 1956.

Web A. Welker, Portageville, Harold D. Jones, New Madrid, for appellant.

Ward & Reeves, Caruthersville, for respondents.

RUARK, Judge.

Appellant, Lorenzo Payne, brought suit against T. W. White and Clara B. White in which, by Count I, he claimed an account for groceries and stock feed purchased and unpaid for. In Count II he set up an agreement of the defendants to sell to him certain property in Portageville, Missouri, at a price of $1,500; that he paid on such purchase price the sum of $444.10; that defendants had refused to complete the transaction by delivery of the deed. Prayer was for specific performance or *in the alternative* for judgment against defendants for said sum of $444.10 with interest. Defendant Clara B. White filed general denial. Defendant T. W. White, for answer to Count I, admitted he owed $55 and denied any further sum. For answer to Count II he denied all of the allegations, "and for a further answer and defense states that said money in the amount of $444.10 paid to this defendant was to be applied on the rental of said real estate." In his counterclaim he claimed balance due on rentals of the property involved from May 1, 1948, to May 1, 1951, in the sum of $635. The whole case being tried to the court, the court found in favor of the plaintiff on the first count of the petition in the sum of $55 plus interest. On the second count the finding was in favor of the defendants and against the plaintiff, with a further specific finding that when the contract (of purchase) was entered into the plaintiff fraudulently represented himself as the son-in-law of the defendants and that the defendants believed plaintiff was married to their daughter, which was not the fact; that thereafter said contract was abandoned by the parties and it was agreed that the sum of $444.10 previously paid would be applied as rentals. The court further found that after crediting the sum of $444.10 aforesaid plaintiff was not further indebted to the defendants and issues on the counterclaim were found in favor of plaintiff.

Plaintiff's first assignment is that the court erred in refusing to make specific findings of fact. This case was tried on December 8, 1953, and apparently concluded on that date. After the parties had rested there was no colloquy or remarks of court or counsel which indicated that the case was not finally submitted or was to be held open for any purpose. Neither party made any request. The record entry of that date shows, "Both sides announce ready for trial, submit this cause to the Court under the pleadings and proof, and after hearing the evidence adduced the Court announces it will take said matters involved under advisement." Appellant's request for findings of fact was not filed until February 13, 1954, after the case had been under advisement for more than two months.

Section 510.310 RSMo 1949, V.A.M.S., provides that if any party shall so request *before final submission of the case,* the court shall dictate to the court reporter, or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded, and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues. All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached. Under this statute the failure to make the request for findings of fact before final submission is fatal. Maas v. Dreckshage, Mo.App., 244 S.W.2d 397.

Unless the case is left open for some further act of the parties, the submission is final when the evidence and arguments are finished or waived and the court, as trier of the fact, has taken the case for decision; and this is true when he takes the case under advisement preliminary to rendering his decision. 27 C.J.S., Dismissal and Nonsuit, § 20, p. 177; Piatt v. Heim & Overly Realty Co., 342 Mo. 772, 117 S.W.2d 327; Lawyers' Co-Op Publishing Co. v. Gordon, 173 Mo. 139, 73 S.W. 155. The plaintiff's request came too late, hence we need not consider whether the findings in the decree were sufficient.

■ Assignment number 2 complains of error of the court in rendering a judgment on September 24, 1954, and another and different judgment on October 12, 1954. The only judgment, or minute in reference to judgment, is the decree of October 12, 1954, to which we have heretofore referred. We are bound by the record, In re Oberman's Estate, Mo.App., 281 S.W.2d 549, 553, and there is nothing to consider in respect to appellant's assignment number 2.

■ The third assignment concerns itself with the weight of the credible evidence. The situation and background of the parties will help explain the issues. In 1941 Lorenzo Payne (42 years old at time of trial) and Lorene, daughter of defendants, T. W. White and Clara White, commenced living together. Lorenzo says Lorene was only his "housekeeper," that he entered into and carried out that arrangement simply to "cover up" and "protect" Lorene, that there was never anything *personal* in their relationship. He said that Lorene's parents knew they were not married. He admits, however, that Lorene was known to his friends as his wife and that a child which was born bore his name. This arrangement continued for some eleven years.

Defendant T. W. White (60 years old, a tenant farmer, father of 10 children and unable to sign his name except by mark) and his wife, Clara (who could read and write), testified Lorenzo said, and they believed, that Lorene and Lorenzo were married and they regarded him as their son-in-law. The fact of this belief is substantiated by the circumstance that in July of 1949 the defendants made a deed (to property which by description would appear to adjoin that involved in this suit) to "Lorenzo Payne and Lorene Payne, husband and wife," and this deed was placed of record. Lorene herself testified she thought she and Lorenzo were married. She said she left home, presumably to go with the plaintiff, one night when her parents were asleep, that she was led to believe a "proxy" marriage had been performed and another girl had "stood in" for her. Her profession of belief in a legal marriage is supported by the fact that she did in 1952 bring suit *for divorce* against Lorenzo, who thereafter filed answer denying the marriage.

In 1947 plaintiff Lorenzo was unemployed and was drawing some kind of compensation (probably workmen's compensation or unemployment compensation). Defendants White then owned the south half of certain lots in Portageville. It was agreed that White would furnish the lumber (which he did) and Lorenzo would build a house on this property in which to live. In return he was to receive one year's rent free and after that was to pay $20 per month (so says Lorenzo) or $25 per month (say the defendants). A four-room house was built with the help of White, two of his sons and a man whom White hired to assist; and Lorenzo and Lorene moved in. In 1949 Lorenzo opened a feed store. Later he started in the grocery business. Lorene says she helped in the store (was this on the adjoining property which had been conveyed to Lorenzo and Lorene in 1949?). On October 21, 1950, plaintiff and defendants agreed that Lorenzo would buy the house we have referred to at a price of $1,500, and he, Lorenzo, gave White his check for $444.10 as down payment. Plaintiff produced as an exhibit a written memorandum of this agreement, which defendants White denied signing. However, they did not deny the making of the verbal agreement to sell, and in fact

they affirm it. Sometime later the parties went to an attorney's office to have the deed and mortgage for the balance drawn up. At that time plaintiff requested that the deed be made to Payne, Incorporated, or to him and his sons (apparently by a marriage earlier in his life). He was then informed that the deed could not be made to a nonexistent corporation. Lorene, who was present, insisted that her name be placed in the deed as one of the grantees. Lorenzo insisted to the contrary, an argument ensued and the upshot of this argument was that the transaction was not completed. Lorenzo did not testify that the Whites *refused* to make the deed at that time. The transaction seems to have been not completed by mutual consent. Thus far the parties are in substantial agreement in respect to the sale transaction. The defendants testified that the parties then agreed that the $444.10 would be credited to the back rent which was due the Whites; they, the defendants, insisting that Lorenzo had never paid them any of the promised rental, which by agreement was to commence in May of 1948. They are supported by several witnesses in respect to this agreement to apply the $444.10 to back rent. Lorenzo, on the other hand, denies there was any agreement in respect to applying the $444.10 to payment of back rentals. He says he didn't owe any rent. He testified that he paid his monthly rental regularly in cash (although he had a checking account and at least sometimes paid his bills by check) and had never gotten a receipt.

In order to support Count I of his petition the plaintiff produced an account for stock feed extending from June 15, 1950, to March 3, 1951, inclusive, in the approximate total of $254, and an account for groceries commencing on July 5, 1952, with "balance on old grocery account" and continuing through the month of July to a total of $54.53. Other than producing a series of charge memorandum tickets, plaintiff's testimony in reference to Count I was meager. Defendants admitted they owed the grocery account but denied the purchase of or promise to pay for the feed.

White and one of his sons testified that two of the White sons worked for Lorenzo two days a week loading and delivering feed, and that they used defendant White's pickup truck in so doing. For this they were to be paid at the rate of $2 per day and they took feed in lieu of money payment.

In court-tried cases it is our responsibility to review the law and the evidence and give such judgment as ought to have been rendered, but we give due regard to the judgment of the trial court, who saw and heard the witnesses and was better able to judge their credibility. Emerson v. Treadway, Mo.App., 270 S.W.2d 614, 617, and citations there given. In this case there was a sharp conflict of evidence, on Count I in respect to whether the feed had been purchased and paid for, and on Count II as to whether plaintiff owed the defendants rent and whether there was an agreement to abandon the original contract of sale-purchase and apply the $444.10 on such past-due rent. If number of witnesses and volume of testimony means anything (and it is by no means the standard which must be followed), the scales were weighted more heavily in favor of the defendants. As to the *quality* of the evidence, there were some portions of defendants' testimony, especially in reference to the execution or nonexecution of the written memorandum, which the court could have well disbelieved. However, the testimony of plaintiff did not show him to be Lorenzo "the Magnificent." The trial court had the witnesses before him and was better able to judge their credibility than we are, and we defer to his judgment in this respect. We cannot say that the determination was against the weight of the evidence.

█ The final assignment is that the court erred in finding there had been an "alleged" contract which was subsequently abandoned, because defendants pleaded and tried their case on the theory there had been no contract. Appellant is in error in stating that defendants tried their case on the theory there was no contract. While they denied execution of the *written* mem-

orandum which expressed the contract, their testimony affirmed that there was a verbal contract for the sale of the property on the terms pleaded by plaintiff. Appellant cannot complain because the court found there had been a contract, for he himself pleaded such. Defendant T. W. White's answer was a general denial and then a plea that the $444.10 was to be applied on the rental. It is true that the relief granted must be consistent with and not antagonistic to the pleading. Thus one may not sue on a theory which disaffirms a deed and recover upon a theory which is based on its affirmance. Branner v. Klaber, 330 Mo. 306, 49 S.W.2d 169, 180. But a defendant may plead as many defenses as he has so long as they are not inconsistent, and the test of inconsistency is whether proof of one defense necessarily disproves the other. Vaughn v. Conran, Mo.App., 20 S.W.2d 968; Finley v. Williams, 325 Mo. 688, 29 S.W.2d 103, 105; see Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55; see Field v. National City Bank of St. Louis, 343 Mo. 419, 121 S.W.2d 769. The defense that the $444.10 was to be applied to rentals is not necessarily inconsistent with the fact that a contract had originally been made or that it was thereafter abandoned. But if it be so construed, then it would seem the specific plea should overcome the general denial. Babcock v. Rieger, 332 Mo. 528, 58 S.W.2d 722; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S.W.2d 705. If there is anything lacking in defendant's pleading it is that it does not contain positive allegation that the contract was abandoned. This was an issue hotly tried by the parties and evidence in connection with the abortion of the contract and, following that, the agreement as to what should be done with the money which had been put up as a down payment came in without objection or exception on the part of the plaintiff either during or after trial. When a fact is not pleaded but the parties offer evidence concerning it and there is no objection and the parties try that issue, it is properly before the court and can be made the basis of a decree, for the petition will be treated as amended. Section 509.500 RSMo 1949,

V.A.M.S.; Duffy v. Barnhart Store Co., Mo.App., 202 S.W.2d 520; Schroeder v. Zykan, Mo.App., 255 S.W.2d 105; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214; Heath, v. Heath, 359 Mo. 590, 222 S.W.2d 778, 785; Polich v. Hermann, Mo.App., 219 S.W.2d 849, 853; see 30 C.J.S., Equity, § 609, p. 1006 et seq.

We are of the opinion that the court did not commit reversible error and that the judgment was for the right party. The case is therefore affirmed.

McDOWELL, P. J., and STONE, J., concur.