**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Relator-Appellant,**

v.

**Paul CARLTON and Mildred Carlton d/b/a Carlton Motor & Salvage, Defendants-Respondents.**

**No. 8893.**

Springfield Court of Appeals, Missouri.

March 27, 1970.

---

Robert L. Hyder, Jefferson City, Terry C. Allen, Sikeston, for relator-appellant.

Briney, Welborn & Spain, Bloomfield, for defendants-respondents.

STONE, Judge.

This is a junkyard case. On September 10, 1968, relator State Highway Commission of Missouri (the Commission) instituted this action in which it sought to en-

join defendants, Paul Carlton and Mildred Carlton, from operating and maintaining a junkyard on a 12-acre tract near Dexter in Stoddard County, Missouri, allegedly in violation of Senate Bill 9, Second Extra Session, 73rd General Assembly. Laws 1965, 2nd Ex.Sess., pp. 905–907, now codified as §§ 226.650 to 226.720, incl., RSMo 1967 Supp., V.A.M.S.[1] From the judgment and decree finding the issues for defendants and dismissing relator's petition, the Commission appeals.

Relator alleged in its petition "that the said junkyard was not lawfully in existence on the effective date of Senate Bill 9 [August 4, 1966] . . . in that it was within 200 feet of the right-of-way of a state road, State Route 25, and a county road, and was not screened as required by law, and was, therefore, in violation of § 229.180 RSMo 1959";[2] that defendants' operation and maintenance of their junkyard "is in violation of Senate Bill 9[3] . . . in that it is within 1,000 feet of the nearest edge of the right-of-way of a primary highway, State Route 25, and is not licensed";[4] and that defendants "have failed to correct the violation of law within in 60 days after having been given notice and continue unlawfully to operate or maintain said junkyard."[5]

1. All references to these statutes (*the present junkyard act*) are to RSMo 1967 Supp., V.A.M.S.

2. All references to §§ 229.180 and 229.190 (*the former junkyard act*) and to other statutes are to RSMo 1959, V.A.M.S. *Section 229.180* stated that: "No auto wrecking yard or junk yard shall be established, maintained or operated within two hundred feet of any state or county road in this state, unless such auto wrecking yard or junk yard is screened from said road by tight board or other screen fence not less than ten feet high, or of sufficient height to screen the wrecked or disabled automobiles or junk kept therein from the view of persons using such road on foot or in vehicles in the ordinary manner . . . .." *Section 229.190* declared that: "Any person, firm or corporation, who shall establish, conduct, own, maintain and operate [an] automobile wrecking yard or junk yard without complying with the provisions of section 229.180 shall, on conviction, be guilty of a misdemeanor."

3. Senate Bill 9 [Laws 1965, 2nd Ex.Sess., pp. 905–907; now §§ 226.650 to 226.720, incl.] was "AN ACT to repeal sections 229.180 and 229.190, RSMo 1959, relating to certain junkyards with penalty provisions, and to enact in lieu thereof nine new sections relating to the same subject, with penalty provisions." With some relatively minor and here immaterial changes in and additions to the language thereof, § 229.180 was reenacted as *Section 8* of S.B. 9 and § 229.190 was reenacted as *Section 9* of S.B. 9 [Laws 1965, 2nd Ex.Sess., p. 907; *now subsections 1 and 2, respectively, of § 226.-720*].

4. *Section 3* of S.B. 9 [*now § 226.670*] prohibits the operation, establishment or maintenance of "a junkyard, any portion of which is within one thousand feet of the nearest edge of the right-of-way of any interstate or primary highway, without obtaining a license from the state highway commission of Missouri." *Section 4* of S.B. 9 [*now § 226.680*] provides that: "No license shall be granted for the operation of a junkyard within one thousand feet of the nearest edge of right-of-way of any highway on the interstate or primary system except the following: (1) Those screened by natural objects, plantings, fences, or other appropriate means so as to render them not visible from the traveled way of the highway involved . . . (4) Those not visible from the right-of-way of the interstate or primary system." *Section 5* of S.B. 9 [*now § 226.690*] states that "[a]ny junkyard lawfully in existence on the effective date of this act [August 4, 1966] which is within one thousand feet of the nearest edge of the right-of-way and visible from the traveled roadway of any highway on the interstate or primary system shall be screened, if feasible, by the state highway commission so as to render it not visible from such highways" and empowers the Commission, if it "shall determine that adequate screening . . . is not economically feasible or possible," to secure and pay for the relocation, removal or disposal of such junkyard.

5. *Section 7* of S.B. 9 [*now § 226.710*] makes the establishment, operation or maintenance of an unlicensed junkyard a misdemeanor, grants "[a]ny person violating the provisions of this act [§§ 226.-650 to 226.720] . . . sixty days to

Defendants' 12-acre tract (on a portion of which, in extent not fixed in the record, their junkyard is maintained) lies between two roads both of which run in a general north-south direction, to wit, on the west side of the junkyard State Highway Route 25 and on the east side an old gravel road with "one set of ruts" referred to in the legal description of defendants' tract as "the Old Bloomfield and Dexter Public Road" (hereinafter called *the old road*). In response to the Commission's interrogatories, defendants frankly admitted that wrecked or dismantled automobiles, or parts thereof, were kept or stored on their tract within 200 feet *of the east right-of-way line* of Route 25 and also within 200 feet of the old road; but they vigorously asserted that their junkyard was "lawfully in existence on August 4, 1966" [§ 226.690] and that, therefore, the cited statute imposed on the Commission the obligation to screen or, if that were not feasible, to relocate, remove or dispose of their junkyard. Hence, the meritorious and determinative question is whether or not defendants' junkyard (frequently referred to as *the junkyard*) was "lawfully in existence on August 4, 1966" or, otherwise stated, whether or not the junkyard was then in compliance with § 229.180 (quoted marginally in note 2) of the former junkyard act.

There has been no suggestion of record or aliunde that prior to August 4, 1966, any complaint of noncompliance with § 229.180 had been presented to or lodged against defendants; but in this action the Commission charges such noncompliance in two respects, i. e., (1) that the junkyard was within 200 feet *of the east right-of-way line* of Route 25 and not properly screened, and (2) that the junkyard was within 200 feet of the old road and not properly screened. Since practically all of the testimony upon trial was directed to the latter charge, we treat of it first.

In the 1920s, the old road had been an integral part of "the only gravel road" between Dexter and Bloomfield, the county seat, but it had lost that proud status many years prior to August 4, 1966. On that date, the old road was only a dead-end serpentine way no more than one mile in length which at its southern end diverged from the east side of Route 25 and ran in a northerly direction through Dexter Memorial Park Cemetery, through a narrow gap in an east-west fence on the north side of the cemetery, and along the east side of defendants' 12-acre tract to the road's northern terminus at the south right-of-way line of U.S. Highway 60, a four-lane east-west turnpike. There were only two houses on the old road north of the cemetery, both being on the east side of that road with one north and the other "just a little bit south" of defendants' tract. One of the Commission's witnesses testified that the house north of defendants' tract had not been occupied for seven or eight years prior to trial, while another witness for the Commission graphically described it as "not really what you'd call a house, nobody lives up there, just an old barn of a thing where they kept some stock." The unidentified owner of that tract was said to have "sort of a pig farm up there and a few ducks" to which he would attend by driving over the old road "twice a day up there and back." However, for the purpose of showing that the old road was a "county road" within the contemplation of § 229.180 of the former junkyard act, the Commission called several witnesses who testified that the old road had been and was being maintained by Liberty Township; and, without detailing that evidence or further commenting upon the sparse use of that road, we accept, for the purposes of this opinion, the Commission's conclusion that it was a "county road."

 It being admitted that the junkyard extended within 200 feet of the old road, the requirement of § 229.180 was that it be "screened from said road by tight board or *other screen fence* not less than

correct the violation after proper notification," and declares that "[e]ach day a junkyard is unlawfully maintained constitutes a separate offense.

ten feet high, or *of sufficient height to screen* the wrecked or disabled automobiles or junk kept therein *from the view of persons using such road on foot or in vehicles in the ordinary manner . . . .*" (All emphasis herein is ours.) There was no "tight board" fence along the east side (or, for that matter, along any other side) of the junkyard; but *defendants' position,* adequately supported by their evidence, was that on August 4, 1966, the trees, bushes, shrubs and rank undergrowth along the west side of the old road and in the fencerow afforded and constituted an effective "screen fence," impenetrable to the view of those using the old road "on foot or in vehicles in the ordinary manner." The *Commission's contentions* were (1) that screening by trees, bushes, shrubs and undergrowth was not "permissible screening" under § 229.180 of the former junkyard act,[6] and (2) that, even if such screening was permissible under § 229.180, "it did not fully render [defendants'] junk not visible from [sic] persons using the old road on foot or in vehicles."

The overriding objective of all statutory construction is to ascertain and give effect to the legislative intention [see cases collated in 26 West's Missouri Digest, Statutes, ⬯181(1)]; and, as aids in that quest, the courts frequently make use of various auxiliary rules. One of the chief of these is that the court must look to, and never lose sight of, the object sought to be accomplished and the purpose to be served.[7] The very language of § 229.180 leaves no room for doubt but that the object and pur-

pose of that legislative enactment were simply that junkyards within two hundred feet of any state or county road be screened, i. e., concealed, "from the view of persons using such road on foot or in vehicles in the ordinary manner." To rule, as the Commission supplicates, that screening by the trees, bushes, shrubs and rank undergrowth along the west side of the old road and in the fencerow was not "permissible screening" under § 229.180 would work a foolish and senseless result in flagrant disregard of another oft-invoked auxiliary rule, namely, that the law favors a statutory construction harmonizing with reason and tending to avoid unjust, unreasonable or absurd results;[8] and we decline to honor the Commission's request that we so hold. See Deimeke v. State Highway Commission, Mo., 444 S.W.2d 480, in which an attack upon the constitutionality of the present junkyard act was denied but the finding of the trial court that the plaintiff junkyard operator did not have "a lawful existing nonconforming use" on August 4, 1966, the effective date of the act, was disapproved because "the front of the [junkyard] was completely screened by buildings . . . one side was screened for a distance of two hundred feet by a ten-foot metal fence, and *the other was effectively screened for a distance of one thousand feet by a multiflora rose hedge* which was more than ten feet in height." 444 S.W.2d at 485(5).

■ The Commission's assertion that, if the screening by trees, bushes, shrubs and rank undergrowth was "permissible" under

6. Section 226.680 of the present junkyard act specifically approves screening "by natural objects, plantings, fences, or other appropriate means so as to render [a junkyard] not visible from the traveled way of the highway involved."

7. Edwards v. St. Louis County, Mo. (banc), 429 S.W.2d 718, 722(5); Stewart v. Johnson, Mo., 398 S.W.2d 850, 853 (3); State ex rel. Gerber v. Mayfield, 365 Mo. 255, 259, 281 S.W.2d 295, 297 (3); State ex inf. Kamp ex rel. Rodgers v. Pretended Consolidated School Dist. No. 1 of Montgomery Co., 359 Mo. (banc)

639, 645, 223 S.W.2d 484, 488(4); In re Duren, 355 Mo. (banc) 1222, 1235, 200 S.W.2d 343, 352(8), 170 A.L.R. 391.

8. Maryland Casualty Co. v. General Electric Co., Mo. (banc), 418 S.W.2d 115, 118 (3); Suburbia Gardens Nursery, Inc. v. County of St. Louis, Mo. (banc), 377 S.W.2d 266, 271(3); State ex rel. Stern Brothers & Co. v. Stilley, Mo., 337 S.W.2d 934, 939(3); Owen v. Riffie, Mo., 323 S.W.2d 765, 770(2); Laclede Gas Co. v. City of St. Louis, 363 Mo. (banc) 842, 848, 253 S.W.2d 832, 835(3).

Section 229.180, "it did not fully render [defendants'] junk not visible from [sic] persons using the old road on foot or in vehicles," is addressed to the evidence. It is true that the Commission adduced evidence tending to support the above-quoted assertion; but the force and effect of that evidence undoubtedly were weakened (a) by the fact that the Commission's photographic exhibits (upon which it leaned heavily) were taken on July 10, 1967, and October 19, 1968, *after* employees of Liberty Township admittedly had done considerable "tree work" and clearing along the west side of the old road "sometime in 1966" (what motivated that work and whether it was done before or after August 4, 1966, the effective date of the present junkyard act, were questions suggested but left unsettled by the Commission's evidence), and (b) by the circumstance that most of those photographs showing the east side of the junkyard adjoining the old road were taken from points just outside the wire fence along that side of the junkyard and near the west right-of-way line of the old road and thus did not necessarily portray what might have been seen by "persons using such road on foot or in vehicles in the ordinary manner." Section 229.180. On the other hand, defendant Paul Carlton and four witnesses positively stated in substance that on and prior to August 4, 1966, the growth along the west side of the old road and in the fencerow was so dense and thick that it was impossible to see any portion of the junkyard from the traveled way of the old road, and two photographs received as defendants' exhibits tended to support that oral testimony. Hence, the Commission concedes in its brief that "there [was] conflicting evidence as to whether the brush and undergrowth effectively screened [defendants'] junkyard from view of the old county road."

Notwithstanding the trial court's summary rejection of the timely request of the Commission's counsel that "in accordance with Rule 73.01 . . . the court make findings of fact" (of which more anon),

the court's recorded comments during and at the close of the trial made it crystal clear that he accepted defendants' evidence. Aside from that, the court's general finding of "the issues in favor of the defendants and against the plaintiff" dictates that the issue under consideration, namely, whether on August 4, 1966, the trees, bushes, shrubs and rank undergrowth along the west side of the old road and in the fencerow effectively screened the junkyard "from the view of persons using such road on foot or in vehicles in the ordinary manner" [§ 229.180], be deemed to have been found in favor of defendants. V.A.M.R. Rule 73.01 (b); § 510.310(2); Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 403; Ramacciotti v. Joe Simpkins, Inc., Mo., 427 S.W.2d 425, 426(3).

Although we "review the case upon both the law and the evidence" [V.A.M.R. Rule 73.01(d); V.A.M.S. § 510.310(4)] and, on such review de novo, reach our own conclusions as to the weight of the evidence [Hampton v. Niehaus, Mo., 329 S.W.2d 794, 800(6); Trotter v. Trotter, Mo., 316 S.W. 2d 482, 484(2); Masterson v. Plummer, Mo.App., 343 S.W.2d 352, 354(1)], in the discharge of our appellate function we must respect the pointed admonitions that due regard be given to the superior opportunity of the trial court to judge of "the credibility and characteristics of the witnesses who testified before him" [Peine v. Sater, Mo., 289 S.W.2d 101, 102(1); Spaeth v. Larkin, Mo., 325 S.W.2d 767, 771(3); Bourne v. Manley, Mo.App., 435 S.W.2d 420, 429(15)—see V.A.M.R. Rule 73.01(d); V.A.M.S. § 510.310(4)]; and where, as with respect to the issue under consideration, the evidence was conflicting and determination thereof substantially rested upon the credibility of the witnesses and the weight to be accorded to their testimony, we should and do defer to the finding of the trial court. Leggett v. Missouri State Life Ins. Co., Mo. (banc), 342 S.W.2d 833, 850(2); Day v. Blackbird, Mo., 331 S.W.2d 658, 660(2); In re Petersen's Estate, Mo., 295 S.W.2d 144, 148(3); Schreck

v. Parker, Mo.App., 388 S.W.2d 538, 545 (16). Accordingly, we conclude that, insofar as the old road was concerned, the junkyard was in compliance with § 229.180 of the former junkyard act and thus was lawfully in existence on August 4, 1966.

■ The Commission also charges noncompliance with § 229.180 in that the unscreened junkyard was within 200 feet *of the east right-of-way line* of Route 25, a state road.[9] While admitting that, defendants denied that the junkyard was within 200 feet *of the traveled way,* i. e., the paved roadway, of Route 25, and there was no evidence to the contrary.[10] Our inquiry here becomes one of statutory construction, i. e., whether the proscription of § 229.180 against maintenance or operation of an unscreened junkyard "within two hundred feet of any state or county road in this state" was applicable to all junkyards within two hundred feet *of the nearest right-of-way line* of any state or county road, as the Commission insists, or to those within two hundred feet *of the traveled way* of any such road, as defendants maintain. Opposing counsel agree that this issue has never been determined by an appellate court. In fact, we have found no reported case even citing § 229.180 during its thirty-year life-span from 1935 [Laws 1935, p. 345] to 1965. Laws 1965, 2nd Ex. Sess., p. 905.

The Commission here undertakes to support its position in several ways, to wit: (a) by inviting consideration of certain other statutes [e. g., §§ 229.010, 229.140 and

229.150(2)] in which (as counsel assert and we agree) "road" or "roads" was used in such context as to indicate that it there was intended to include more than the traveled way; (b) by referring to the statutory definition of "state highway" in § 226.010(6); (c) by assuming that "of itself, 'road' is synonymous with highway" (as in some instances it may be) and then directing attention to the definition that "'[i]n its broadest sense the term "road" is synonymous with "way," and thus applies to any place set apart and appropriated either de jure or de facto for the purpose of free passage, whether by public authority or by the general license or permission of the owners of the land and also to private ways,'" as quoted in State ex rel. Clay County v. Hackmann, 270 Mo. (banc) 658, 669, 195 S.W. 706, 708, a mandamus proceeding to compel registration of county road bonds where the question under consideration was whether short road segments within incorporated cities, which were integral parts of routes to be improved, were "public roads" within the meaning of constitutional and statutory provisions authorizing such bonds; (d) by offering, as supporting the Commission's position "by analogy," the holding in Eoff v. Senter, Mo.App., 317 S.W.2d 666, 671(7, 8), that the statutory mandate requiring the exercise of the highest degree of care by "[e]very person operating a motor vehicle on the highways of this state" [§ 304.010(1)] was applicable to defendant motorist whose automobile was either on the traveled way or on the shoulder of a public road at the time of accident, particularly so where "both parties

---

9. The width of the right-of-way of Route 25 was not shown definitely, but the Commission's request for an admission "that the right-of-way line for State Highway 25 is 125 feet from the center of the concrete pavement" (denied by defendants for "lack of information or knowledge" and averred to have been "part of the [Commission's] records . . . and peculiarly within [its] knowledge") suggested that the right-of-way was 250 feet in width.

10. The Commission's asseveration in its brief that the junkyard was visible "from

the traveled portion" of Route 25 cannot be accepted for want of evidentiary support in the record. Even if it were inferred (sans testimony to that effect) that the Commission's three photographic exhibits A, B and C, to which counsel refer in this connection, were taken from points within the right-of-way of Route 25, it could not be found that any of those photographs were taken from, or portrayed the view of one on, "the traveled portion" of that highway.

tried the case on the theory that defendant owed plaintiff the duty to exercise the highest degree of care"; and (e) by citing two cases from other jurisdictions in which the meaning of the term "highway" was discussed, namely, Ray v. Terry, 32 Ala. App. 582, 28 So.2d 916, 918, a damage suit arising out of a nocturnal collision claimed to have been caused by the blinding headlights of an automobile parked on its left-hand shoulder of the paved roadway, and Robbins v. Hartford City Gaslight Co., 82 Conn. 394, 74 A. 113, 114, a suit for damages to trees in the parkway allegedly caused by gas escaping from defendant's mains in the street. But in our view of the instant case, the Commission's argument and authorities neither reach nor rule the situation here presented.

It has been well said on high authority that: "Most words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section . . . . It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance." Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 608–609, 76 L.Ed. 1204, 1207–1208; Schultz v. N.L.R.B., 109 U.S.App.D.C. 120, 284 F.2d 254, 258–259.[11] So it is with respect to the term "road." The meaning of that word is not uniform or fixed;[12] and, in determining its meaning in a given instance, the courts may resort to and utilize widely-accepted and oft-employed auxiliary rules of statutory construction, namely, that the particular meaning to be ascribed to a specific word in a statute to some extent depends upon, and may be enlarged or restricted by, the context in which the word is used[13] and, where it is susceptible of different meanings, that interpretation thereof should be adopted which best harmonizes with the manifest purpose of the statute.[14]

11. See also United States v. Raynor, 302 U.S. 540, 547–548, 58 S.Ct. 353, 356–357, 82 L.Ed. 413, 418; Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, 376; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 678, 70 S.Ct. 876, 882, 94 L.Ed. 1194, 1203; Grand Lodge of International Ass'n. of Machinists v. King, 9 Cir., 335 F.2d 340, 344–345(5), certiorari denied 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334; Commerce-Pacific, Inc. v. United States, 9 Cir., 278 F.2d 651, 655(3), certiorari denied 364 U.S. 872, 81 S.Ct. 115, 5 L.Ed.2d 94; Sunset Tel. & Tel. Co. v. City of Pasadena, 161 Cal. 265, 275, 118 P. 796, 800(5); Wall v. Board of Directors of Deaf, Dumb & Blind Asylum, 145 Cal. 468, 473, 78 P. 951, 953; Bethlehem Pacific Coast Steel Corp. v. Franchise Tax Board, 203 Cal.App.2d 458, 21 Cal.Rptr. 707, 710(3); Brofman v. Industrial Commission, 117 Colo. 248, 186 P.2d 584, 587(3).

12. 1 Elliott, Roads and Streets (4th Ed.) § 7, p. 10; 39 C.J.S. Highways § 1 c, p. 917; Southern Ry. Co. v. Combs, 124 Ga. 1004, 53 S.E. 508; Griffin v. Sanborn, 127 Ga. 17, 56 S.E. 71(2); Leonard v. Talbert, 222 S.C. 79, 71 S.E.2d 603, 605. See particularly Norfolk & W.

Ry. Co. v. Faris, 156 Va. 205, 157 S.E. 819, 824(4, 5), holding that statutory mandate that railroad repair crossing "to the full width of the county road" required such repair only to "the full width of the generally traveled way," and Moleske v. MacDonald, 109 Conn. 336, 146 A. 820, 821, pointing out that, while "the word [road] is often used to designate the entire space between the fence lines, it is also often used in a more restricted sense, as applying only to that portion actually used for vehicular traffic."

13. 1 Elliott, op. cit. supra at 10; 39 C.J.S. Highways § 1 c, p. 917; Griffin v. Sanborn, supra note 12; Leonard v. Talbert, supra note 12. See Hayes v. Hayes, 363 Mo. 583, 588, 252 S.W.2d 323, 327(2); Household Finance Corp. v. Robertson, Mo. (banc), 364 S.W.2d 595, 602; Union Elec. Co. v. Morris, 359 Mo. 564, 569, 222 S.W.2d 767, 770; Lamar Water & Elec. Light Co. v. Lamar, 128 Mo. 188, 223, 31 S.W. 756, 760–761, 32 L.R.A. 157; 82 C.J.S. Statutes § 348, p. 723; 50 Am.Jur. Statutes § 247, p. 241.

14. Elliott, op. cit. supra at 10; 39 C.J.S. Highways § 1 c, p. 917; Norfolk & W. Ry. Co. v. Faris, supra note 12, 157 S.E. at 824(4); Moleske v. MacDonald, supra

As we have noted, the manifest purpose of § 229.180 was that junkyards "within two hundred feet of any state or county road" be screened "from the view of persons using such road on foot or in vehicles in the ordinary manner." When that statute and § 229.190 [the former junkyard act] were repealed, Senate Bill 9 [Laws 1965, 2nd Ex.Sess., pp. 905–907; now §§ 226.650 to 226.720, incl.] enacted "in lieu thereof" nine new sections relating to the same subject. Two of those sections, i. e., Sections 8 and 9 [subsections 1 and 2, respectively, of § 226.720], were reenactments of §§ 229.-180 and 229.190, couched in substantially the same terminology and plainly evincing the same object and purpose. Section 3 of Senate Bill 9 [§ 226.670] forbade the operation, establishment or maintenance of any junkyard "within one thousand feet of the nearest edge of the right-of-way of any interstate or primary highway" without a license from the Commission. Section 4 of Senate Bill 9 [§ 226.680] prohibited the granting of a license for operation of any such junkyard excepting, inter alia, "[t]hose screened . . . so as to render them not visible from the traveled way of the highway involved" and "[t]hose not visible from the right-of-way of the interstate or primary system." And Section 5 of Senate Bill 9 [§ 226.690] required the Commission to screen, "if feasible," and

otherwise to relocate, remove or dispose of, "[a]ny junkyard lawfully in existence on August 4, 1966, which is within one thousand feet of the nearest edge of the right-of-way and visible from the traveled roadway of any highway on the interstate or primary system." [15]

When the General Assembly repealed §§ 229.180 and 229.190 (the former junkyard act) and in lieu thereof enacted the present junkyard act which included similar statutory provisions [§ 226.720, subsecs. 1 and 2], it undeniably had the opportunity and right, if it had seen fit to do so, to conform the two proscriptions in the present junkyard act, i. e., (1) the *new* proscription applicable to any junkyard within one thousand feet *of the nearest edge of the right-of-way* of any interstate or primary highway [§§ 226.670, 226.680 and 226.690] and (2) the *old* proscription of § 229.180, reenacted in § 226.720(1), applicable to any junkyard within two hundred feet of any other state or county road. Its failure so to do may be assumed to have been considered and deliberate. Cf. Mack Motor Truck Corp. v. Wolfe, Mo.App., 303 S.W.2d 697, 701(7). It is a settled canon of statutory construction that, where different language is used in the same connection in different parts of an act, it is presumed that the legislative body intended different

note 12, 146 A. at 821; Leonard v. Talbert, supra note 12, 71 S.E.2d at 605. See Hayes v. Hayes, supra note 13, 252 S.W.2d at 327(2); O'Malley v. Continental Life Ins. Co., 335 Mo. 1115, 75 S.W.2d 837, 839(5); State ex rel. Emmons v. Hollenbeck, Mo.App., 394 S.W. 2d 82, 87; State ex rel. Slinkard v. Grebe, Mo.App., 249 S.W.2d 468, 470(3).

15. Practical considerations motivating this legislation at the 2nd Ex.Sess. of the 73rd General Assembly which convened on March 7, 1966, are suggested by the "Highway Beautification Act of 1965" approved on Oct. 22, 1965, which warned that "Federal-aid highway funds apportioned on or after January 1, 1968, to any State which the Secretary [of Commerce] determines has not made provision for effective control of the establishment and maintenance along the In-

terstate System and the primary system of outdoor junkyards, which are within one thousand feet of the nearest edge of the right-of-way and visible from the main traveled way of the system, shall be reduced by amounts equal to 10 per centum of the amounts which would otherwise be apportioned to such State . . . .." [Pub.L. 89–285, Title II, § 201; 79 Stat. 1030; 23 U.S.C.A. § 136 (b)], included other definitions and provisions now substantially embodied in Missouri's present junkyard act [§§ 2 to 5, incl., of S.B. 9; §§ 226.660 to 226.690, incl.], fixed "[t]he Federal share of landscaping and screening costs" and "[j]ust compensation . . . paid the owner for the relocation, removal, or disposal of" certain categories of junkyards at "75 per centum" [23 U.S. C.A. § 136(i, j)], and appropriated Federal funds therefor.

meaning and effect.[16] We are of the opinion that such presumption properly should be recognized and indulged here, and that the *old* proscription of § 229.180 should be construed as having been applicable to junkyards within two hundred feet of *the traveled way* of any state or county road.

■ Still another consideration points to and supports that conclusion. Since violation of § 229.180 was, by § 229.190, made a misdemeanor and thus subjected an offender to punishment, the statute was penal in nature. City of St. Louis v. Brune Management Co., Mo.App., 391 S.W.2d 943, 946 (4). Penal statutes are construed strictly against the state and liberally in favor of the accused.[17] "Statutes and ordinances which fix crimes, or quasi crimes, should so fix them that there could be no uncertainty. They should be so worded that one could read them, and know whether or not he was violating [the] law." Ex parte Taft, 284 Mo. 531, 544, 225 S.W. 457, 461(10); State v. McClary, Mo.App., 399 S.W.2d 597, 599 (5). A penal statute is not to be held to include offenses or persons other than those which are clearly described and provided for both within the spirit and letter of the statute; and, if there is a fair doubt as to whether the act charged is embraced within the prohibition, that doubt will be resolved

in favor of the accused.[18] The record and briefs in the case at bar persuasively evidence such fair doubt, which we resolve in favor of defendants. In the absence of any showing that the junkyard was within two hundred feet of the traveled way of Route 25, the trial court properly found for defendants on the issue as to whether or not, insofar as that road was concerned, the junkyard was in compliance with § 229.180 of the former junkyard act and thus was lawfully in existence on August 4, 1966.

■ One other assignment in the Commission's brief, i. e., "that the court erred in refusing to make specific findings of fact in accordance with Civil Rule 73.01(b) as [the Commission] had requested before the court took the case under advisement," deserves consideration. The transcript on appeal, which we take as it comes to us [McCandless v. Manzella, Mo., 369 S.W.2d 188, 191(6); Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2)], shows that, when rebuttal witness Middleton was excused, the Commission's counsel stated "plaintiff rests," defendants' counsel said "nothing further," and the Commission's counsel then made this request, "in accordance with Rule 73.01, we'll ask the court make findings of fact," to which the court immediately responded, "the request having come aft-

16. Morgan v. Jewell Const. Co., 230 Mo. App. 425, 428, 91 S.W.2d 638, 640(2); Novicki v. O'Mara, 280 Pa. 411, 124 A. 672, 673(5); In re Kesl's Estate, 117 Mont. 377, 161 P.2d 641, 645–646(7); People v. Ector, 231 Cal.App.2d 619, 42 Cal.Rptr. 388, 392(8); People v. Campbell, 110 Cal.App. (Supp.) 783, 291 P. 161, 162(3); McCarthy v. Board of Fire Com'rs. of City and County of San Francisco, 37 Cal.App. 495, 174 P. 402, 403; Catalanello v. Cudahy Packing Co., Sup., 27 N.Y.S.2d 637, 641(12), affirmed 264 App.Div. 723, 34 N.Y.S.2d 37, appeal denied 264 App.Div. 779, 35 N.Y.S.2d 726; Lehman, Durr & Co. v. Robinson, 59 Ala. 219, 225–226(1); 82 C.J.S. Statutes § 348, l. c. 729; 50 Am.Jur. Statutes § 274, p. 261.

17. State v. Katz Drug Co., Mo. (banc), 352 S.W.2d 678, 682(3); State v. Chadeayne, Mo. (banc), 323 S.W.2d 680, 685

(4); State v. McClary, Mo.App., 399 S. W.2d 597, 599(1). See Cramer v. Smith, 350 Mo. (banc) 736, 168 S.W.2d 1039, 1040(2); Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S.W.2d 360, 366 (5); Kissel v. Aetna Casualty & Surety Co., Mo.App., 380 S.W.2d 497, 509(4); Rohlfing v. State Farm Fire & Cas. Co., Mo.App., 349 S.W.2d 472, 477(4).

18. State v. McClary, supra note 17, 399 S.W.2d at 599(3–5); City of St. Louis v. Brune Management Co., Mo.App., 391 S.W.2d 943, 946(2); State v. Hall, Mo. App., 351 S.W.2d 460, 463(3); Willis v. American National Life Ins. Co., Mo. App., 287 S.W.2d 98, 104(6); City of St. Louis v. Triangle Fuel Co., Mo.App., 193 S.W.2d 914, 915(2). See Levin v. Carpenter, Mo., 332 S.W.2d 862, 865(3), 79 A.L.R.2d 859; State v. Dougherty, 358 Mo. 734, 216 S.W.2d 467, 471(2).

er submission of the case, the court is going to deny that request, and the court is going to enter an order in this case . . . the court finds the issues in favor of the defendants and against the plaintiff, and ordered [sic] that petition for injunctive relief be denied and dismissed at the cost of the plaintiff."

V.A.M.R. Rule 73.01(b) [§ 510.310(2)] pertaining to procedure in court-tried cases provides, in part, that "[i]f any party shall so request before final submission of the case, the court shall dictate to the court reporter, or prepare and file a brief opinion containing a statement of the grounds for its decision . . ., and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues." Accordingly, whether the Commission's request for findings of fact was timely depends upon whether it was made "before final submission of the case." The only case cited on this point in both briefs is Payne v. White, Mo.App., 288 S.W.2d 6, in which we said, per Ruark, J., that "[u]nless the case is left open for some further act of the parties, the submission is final when the evidence and arguments are finished or waived and the court, as trier of the fact, has taken the case for decision" [288 S.W.2d at 8(2)] and held that a request for findings of fact presented "after the case had been under advisement for more than two months" [288 S.W.2d at 7] came too late. But the holding in Payne, supra, and like rulings in other cases [19] afford no support for the trial court's denial of the Commission's request in the case at bar. The transcript shows that the Commission's request immediately followed the close of the evidence and was made known before there had been any indication whether counsel desired to present or would waive oral arguments and likewise prior to any statement by the trial court. Thus, the request was voiced as soon as it could have been after the taking of evidence had been concluded. Mindful that the Supreme Court Rules of Civil Procedure are to be construed "to secure . . . fairness in the administration of justice" [V.A.M.R. Rule 41.03], we are of the opinion that the Commission's request was presented "before final submission of the case" [V.A.M.R. Rule 73.01(b)] and that the trial court erred in denying that request.

■ However, it does not follow that the case should be remanded on that account for we are instructed by V.A.M.R. Rule 83.13(b) [§ 512.160(2)] that "[n]o appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, materially affecting the merits of the action" and by V.A.M.R. Rule 83.13(c) [§ 512.160(3)] that "[u]nless justice requires otherwise, the court shall dispose finally of the case on appeal . . . ." As the Commission points out in its brief, "essentially, in the case at bar, the questions to be determined are questions of law"; and, as we have heretofore noted, the trial court's comments demonstrated his acceptance of defendants' evidence bearing upon factual conflicts. In the circumstances hereinbefore detailed, it may not fairly be said that the trial court's denial of the Commission's request for findings of fact materially affected the merits of the action or in any wise circumscribed, hindered, limited, impeded, or interfered with our full appellate review de novo, upon which we have concluded that the judgment finding the issues for defendants and dismissing relator's petition for injunctive relief should be affirmed.

It is so ordered.

TITUS, P. J., and HOGAN, J., concur.

19. E. g., in the case of In re Adelman's Estate, Mo.App., 377 S.W.2d 549, 552 (3), where no request was made until the motion for new trial was filed; in Bonnot v. Tackitt, Mo.App., 265 S.W.2d 748, 750(1), where a written request for findings was filed nine days after final judgment; and in Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 403(4, 5), where proposed findings of fact were tendered during the period granted counsel for the filing of briefs.