**JO B. GARDNER, INC.,**
**Plaintiff-Appellant,**

v.

**Ruth M. BEANLAND, Executrix of the Estate of Henry L. Beanland, Deceased, Defendant-Respondent.**

**No. WD 31015.**

Missouri Court of Appeals,
Western District.

Dec. 30, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied
March 9, 1981.

Jo B. Gardner, pro se.

Law Offices Hoertel & Wiggins, William W. Hoertel, Rolla, for defendant-respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

PER CURIAM.

Jo B. Gardner, Inc. (Gardner, Inc.), filed two claims, one for $1,788.34 and one for $10,000.00, against the Estate of Henry L. Beanland, deceased, (Beanland) in the Probate Court of Miller County, Missouri. The claims were consolidated for hearing by the Probate Court of Miller County and on November 24, 1976, Gardner, Inc., was allowed $200.00 on the larger claim but nothing on the smaller claim. Gardner, Inc., then filed an affidavit for appeal to the Circuit Court of Miller County regarding both claims. The Circuit Court of Miller County dismissed the consolidated claims "for lack of jurisdiction" and Gardner, Inc., appealed therefrom. Dismissal of the consolidated claims by the Circuit Court of Miller County was reversed by this court, 564 S.W.2d 632 (Mo.App.1978), and the consolidated claims were remanded to the Circuit Court of Miller County for trial.

The present appeal by Gardner, Inc., was taken from a judgment rendered by the Circuit Court of Miller County, after trial upon remand, denying both claims. Gardner, Inc., contends on appeal that the trial court erred in denying both claims. Appellate review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Gardner, Inc., is a professional corporation. Jo B. Gardner (Gardner), attorney at Law, is its only professional employee. On June 6, 1970, Gardner and Beanland entered into a written "contract of employment" regarding Gardner's representation of Beanland in a FELA claim and a claim for "wrongful discharge" against the Rock Island Railroad. While litigation in connection therewith was still pending, Gardner assigned the "contract of employment" to Gardner, Inc. Beanland eventually obtained a judgment in the FELA action against the Rock Island Railroad for $168,000.00 which, with accrued interest, was satisfied for $169,491.48. The Rock Island Railroad prevailed in the action for "wrongful discharge". Under the "contract of employment", an attorney's fee in the amount of $69,938.70 was paid by Beanland to Gardner, Inc. Before the judgment was obtained an additional contract (hereinafter referred to as the "tax and investment advisory contract") was entered into between

Beanland and Gardner, Inc., on February 26, 1973, whereby Beanland agreed to pay Gardner, Inc., 2% annually on any "manageable assets" over a five year period for "tax" and "investment" advice. The "manageable assets", consisting of any net recovery obtained by Beanland in the FELA action, ultimately turned out to be approximately $83,000.00. Beanland died approximately twenty-six months after the judgment obtained against the Rock Island Railroad was satisfied. Approximately sixteen months before he died, Beanland advised Gardner, Inc., in writing that he was "cancelling" the "tax and investment advisory contract".

 Gardner, Inc.'s claim for $1,788.34 consisted of certain expenses incurred in connection with the FELA litigation which Gardner, Inc., was purportedly entitled to be reimbursed for under the terms of the June 6, 1970, "contract of employment". More particularly, Gardner, Inc., sought reimbursement for travel, lodging and food expenses incurred by Gardner in connection with the litigation. Whether or not Gardner, Inc., was entitled to be reimbursed for these expenses was necessarily governed by the terms of the "contract of employment". Although the "contract of employment" was offered and admitted into evidence, it was not included in the record on appeal or separately filed in this court. It was Gardner, Inc.'s duty as appellant to file a record on appeal containing "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(a). As noted, the record filed on appeal did not contain the "contract of employment", nor did Gardner, Inc., undertake to separately file the "contract of employment" in this court pursuant to Rule 81.15. Unfortunately, an intractable surge of incidents of noncompliance with the aforementioned rules persists. Gardner, Inc.'s failure to make the "contract of employment" available to this court places his first point, for dispositional purposes, clearly within the ambit of the obtaining principle that where "exhibits are omitted from the transcript and are not filed with the appellate court, ... the intendment and content of such exhibits will be taken as favorable to the trial court's ruling and as unfavorable to appellant." *Lange v. Baker*, 377 S.W.2d 5, 7 (Mo.App.1964). Accordingly, on the basis of the record presented on appeal this court holds that the trial court did not err in denying Gardner, Inc.'s claim for $1,788.34.

Gardner, Inc., also contends on appeal that the trial court erred in denying its claim for $10,000.00. This claim was posited on Beanland's alleged breach of the "tax and investment advisory contract" entered into on February 26, 1973, between Beanland and Gardner, Inc. Gardner, Inc.'s own evidence disclosed that the "tax and investment advisory contract" was entered into during the ongoing attorney-client relationship between Gardner and Beanland regarding Gardner's representation of Beanland in the litigation against the Rock Island Railroad. The evidence was sparse, at best, as to the extent of the services ostensibly performed on behalf of Beanland by Gardner, Inc., acting through Gardner, under the "tax and investment advisory contract". As gleaned from the record, Gardner prepared several "short form" income tax returns on the basis of information supplied by Beanland, gave some advice on "gift tax ramifications", recommended that approximately $20,000.00 of the "manageable assets" be invested in "Rowe Price New Income Fund", and arranged for deposit of a portion of the "manageable assets" in a bank.

 A fiduciary relationship exists between attorney and client. *In Re Oliver*, 365 Mo. 656, 285 S.W.2d 648, 655 (banc 1956); and *Laughlin v. Boatmen's Nat. Bank of St. Louis*, 163 S.W.2d 761, 765 (Mo.1942). The dissenting opinion of Walker, J., in *Morton v. Forsee*, 249 Mo. 409, 155 S.W. 765, 775 (banc 1913), makes clear, with a majority of the court concurring in the proposition for which it is cited, that this state hews to the principle that agreements made between attorney and client for new and additional services during an ongoing

fiduciary relationship are zealously scrutinized, and an attorney has the burden of proving that he took no undue advantage of the client and that the agreement was fair and reasonable. *Morton v. Forsee, supra,* was cited as authority for the foregoing principle in *Barthels v. Garrels,* 206 Mo.App. 199, 227 S.W. 910, 914 (1920). Imposition of this admittedly stringent burden upon attorneys serves to insure the integrity of the trust and confidence which clients repose in attorneys incident to the attorney-client relationship. Insofar as relevant to the issue under consideration, Gardner, attorney at law, was the alter ego of Gardner, Inc., and the fact that the "tax and investment advisory contract" was in the name of the professional corporation will not be countenanced as a means of circumventing the principle hereinabove mentioned.

■ By reason of the ongoing attorney-client relationship between Gardner and Beanland regarding the railroad litigation, Gardner, Inc., bore the burden of proving that the "tax and investment advisory contract" did not result from undue advantage taken by Gardner, and that it was fair and reasonable. Parenthetically, this court does not mean to conjecturally imply that Gardner took undue advantage of Beanland or that the charges provided for in the contract were unfair and unreasonable. However, this court does intend to unequivocally emphasize that Gardner, Inc., failed to carry its burden of proof in the salient respects heretofore mentioned. There is not a scintilla of evidence to show that the contract was negotiated in an atmosphere of full disclosure and free of any influence of trust and confidence inherent in the attorney-client relationship, or that the nature and extent of services performed and to be performed were commensurate with the charges provided for under the terms of the contract. Gardner, Inc.'s failure to carry its burden of proof in these respects, standing alone, refutes Gardner, Inc.'s contention on appeal that the trial court erred in finding against it on the $10,000.00 claim for breach of contract.

■ Gardner, Inc., also charges that the trial court erred in not making findings of fact requested by Gardner, Inc., pursuant to Rule 73.01.1(b). This rule provides that if any party specifically requests findings on any principal "controverted fact issues" before "final submission of the case" the trial court "shall" comply therewith. Although Gardner, Inc., made such a request, the trial court failed to comply. However, the mandatory tenor of Rule 73.01.1(b) has been judicially tempered in view of the admonitory language of Rule 84.13(b) that "[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action" and of Rule 84.14 that "[u]nless justice otherwise requires, the [appellate] court shall dispose finally of the case." The protracted history of this litigation, two previous trials and a prior appeal, certainly augurs in favor of its final disposition on appeal. As a matter of fact both parties during oral argument on appeal, for this very reason, implored this court to bring this litigation to an end on the basis of the record presented on appeal. Where, as here, it cannot be said that the trial court's failure to honor Gardner, Inc.'s request for findings of fact materially affected the merits of the action, or interfered with appellate review of the legal issues, such failure does not rise to the stature of reversible error. *Lopez v. Vance,* 509 S.W.2d 197, 204 (Mo.App.1974); and *State ex rel. State Highway Comm. v. Carlton,* 453 S.W.2d 642, 652 (Mo.App.1970). In *Witte v. Cooke Tractor Co.,* 261 S.W.2d 651, 660–61 (Mo.App.1953), concerning failure of the trial court to make requested findings of fact and conclusions of law pursuant to Section 510.310, RSMo 1949, the then existing statutory counterpart of present Rule 73.01.1(b), the court held: "Finally, defendant claims that the failure of the trial court to make requested findings of fact and conclusions of law as required by Section 510.-310 RSMo 1949, V.A.M.S. constitutes reversible error. The requirement of the statute in this regard is mandatory, and it is the duty of the trial court in a civil case tried upon the facts without a jury, upon request, to make a written statement of the

grounds for its decision, and to include its findings on any of the principal controverted fact issues. . . . In the case at bar the record adequately discloses the issues of fact that were before the court, the trial court's failure to comply with the request of counsel does not impose an unnecessary burden on this court, and there is no particular need of findings of fact in order to decide the fact issues. Under such circumstances the error committed by the court is not substantial or prejudicial, and, in conformity with the statutory mandate not to set aside the judgment unless clearly erroneous, we do not find it necessary to reverse the judgment and remand the cause for failure to comply with Section 510.310, supra." The cases heretofore cited vis-a-vis the record presented on appeal in the instant case support the conclusion that the trial court's failure to make the requested findings of fact did not rise to the plane of reversible error.

▉▉▉ Gardner, Inc., also charges that the trial court erred in refusing to permit Gardner to testify as a witness on its behalf. Gardner represented Gardner, Inc., throughout this litigation and variably characterized Gardner, Inc., and himself as appearing "pro se". Counsel for the estate objected when Gardner took the stand to testify as a witness in behalf of Gardner, Inc., in face of Gardner's assertion that he did not intend to withdraw as attorney for Gardner, Inc. The objection by counsel for the estate was premised upon Rule 4, DR 5–102. For purpose of appellate disposition, it is unnecessary to decide whether the trial court properly or improperly refused to permit Gardner to testify on behalf of Gardner, Inc., on the basis of the objection which was lodged. Although the trial court foreclosed an attempt by Gardner, Inc., to make an offer of proof, Gardner admitted during oral argument on appeal that the "essence" of his testimony, if he had been permitted to take the stand, would have been that Gardner, Inc., stood ready, willing and able at all times to perform under the terms of the "tax and investment advisory contract". Significance also attaches to the fact that Gardner never stated or implied, either be-

low or on appeal, that his contemplated testimony would prove or tend to prove that the "tax and investment advisory contract" was negotiated in an atmosphere of full disclosure and free of any taint of undue influence arising from the ongoing attorney-client relationship. This silent aspect conjoined with Gardner's admission during oral argument on appeal as to the "essence" of his proposed testimony persuasively demonstrates that Gardner's testimony would not have sustained Gardner, Inc.'s burden of showing that the "tax and investment advisory contract" was fair and reasonable and was not the result of undue influence occasioned by the attorney-client relationship. Since Gardner's proposed testimony would not have filled this evidentiary void, it would not have affected the result reached in the $10,000.00 claim. It is elementary that a refusal to admit evidence does not constitute reversible error where, had it been received, it would not have changed the result reached in the case. *Remmers v. Remmers*, 239 S.W. 509, 515 (Mo.1922); and *Hourigan v. McBee*, 130 S.W.2d 661, 665 (Mo.App.1939). Assuming, arguendo, that the trial court erred in refusing to permit Gardner to testify, doing so did not constitute reversible error because said testimony would not have satisfied the burden of proof incumbent upon Gardner, Inc., in connection with the $10,000.00 claim by reason of the ongoing attorney-client relationship.

Judgment affirmed.

All concur.