Matter of the Suspension of Operator's
License of Harry LEVIN,
Appellant,

v.

Milton CARPENTER, Director of Revenue,
and H. J. Turnbull, Supervisor, Department of Revenue, Respondents.

No. 46959.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Raymond Peltzman, Kansas City, for appellant.

John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondents.

BOHLING, Commissioner

Harry Levin appeals from a judgment sustaining a thirty-day suspension of his license as an operator of motor vehicles upon the highways of this State by the Director of Revenue, State of Missouri, and more particularly as "an habitual violator of traffic laws" within the hereinafter quoted provisions of sections 302.281 and 302.010, re-enacted by Laws 1955, p. 621. Statutory references are to RSMo 1949 and V.A.M.S. The case involves four moving traffic violations of ordinances of Kansas City, Missouri, between July 17, 1956, and October 23, 1957. Section 302.225, subd. 2 requires "[e]very court having jurisdiction over offenses committed under * * * any * * * municipal ordinance regulating the operation of vehicles on highways" to forward to the Director, upon forms furnished by him, "a record of the conviction of any person in said court for a violation of any of said * * * ordinances other than nonmoving traffic violations * * *." (See section 304.120 for authority of municipalities to enact local traffic regulations.) Three of the violations resulted in appellant's paying "satisfaction fines," under ordinance provisions hereinafter mentioned, to the Traffic Violation Bureau of the city. Appellant's two main contentions are that said payments of "satisfaction fines" are not to be considered among the four convictions necessary to constitute one "an habitual violator of traffic laws" under section 302.010

(8), and that he was not accorded due process of law in that he was given no notice of or afforded any opportunity for a hearing before the Director of Revenue on the suspension of his operator's license.

The parties proceeded on the theory the Traffic Code of Kansas City was before the court. To quote the applicable ordinances would unduly extend this opinion. We state the substance of the material provisions, quoting portions thereof when deemed necessary.

Section 76 of the Administrative Code and § 31–133 of the Traffic Code of Kansas City "established a traffic violation bureau to assist the" Municipal Court "with the clerical work of traffic cases"; and placed said bureau "under the charge of the clerk of the municipal court." The record established that this step was taken on account of the large number of non-moving and of specified classes of moving traffic violations in the city. Any accused person who believes the charge against him is not justified may have the controversy adjudged in the Municipal Court.

Section 31–142 of the Traffic Code authorizes arresting officers for the moving traffic violations here involved to issue to the violator a notice to answer the charge against him within five working days at the Traffic Violation Bureau; and upon the violator's giving a written promise to so answer, the officer is directed to release him from custody. This notice is referred to in the record as a "ticket" or "traffic ticket warrant." It is issued by the officer to the person arrested. Section 31–142 does not apply to, among others, the more serious moving violations.

Section 31–134 provides, so far as material, that any person receiving the notice mentioned in § 31–142 "may, at his election, in satisfaction of the charges set forth in such notice, voluntarily appear within five days * * * and pay the sum or sums fixed as the satisfaction fine or fines applicable to the violations charged in such

notice by the provisions of sections 31–144 and 31–145, or post cash bond in the full amount of the satisfaction fines for appearance in the municipal court * * *."

We understand that § 31–144 sets forth the schedule of satisfaction fines applicable to a first "moving vehicle violation"; and that § 31–145 sets forth the satisfaction fines for the second and third "moving vehicle violations" during any twelve-month period.

Under other provisions of the Traffic Code, if such person fails to timely (within ten working days) pay such satisfaction fine or post such bond, an information is to be filed, a warrant is to issue against him, and the case is to be prosecuted in the Municipal Court.

The record establishes that the Clerk of the Municipal Court, in addition to the record of proceedings before said court, is required to and maintains suitable records of every traffic violation handled in the Traffic Violation Bureau. The records of the traffic violation convictions in the Municipal Court and of the payment of satisfaction fines to the Traffic Violation Bureau are forwarded to the Director of Revenue.

Appellant admits that on July 18, 1956, he was convicted in the Municipal Court of speeding and fined $19.00; that on May 1, 1957, he paid a "satisfaction fine" of $4.50 for making a prohibited left turn; that on July 17, 1957, he paid a "satisfaction fine" of $8.00 for disregarding a traffic "stop" signal; and that on October 23, 1957, he paid a "satisfaction fine" of $6.00 for making a prohibited left turn.

Section 302.281 of our statutes provides: "1. The director * * * shall suspend the license of an operator * * * for a period not to exceed one year, upon a showing by the records of the director or any public records that the operator * * * : (3) Is an habitual violator of traffic laws; * * *."

Section 302.010, "Definitions," provides, so far as material:

"(4) 'Conviction', any conviction whether appealed or not, except that if any conviction is appealed and reversed or set aside on appeal it shall not be considered a 'conviction' under this chapter; also a forfeiture of bail or collateral deposited to secure a defendant's appearance in court, which forfeiture has not been vacated, shall be equivalent to a conviction;" and

"(8) 'Habitual violator of traffic laws', a person who has been adjudged guilty at least four times within two years of violating any traffic laws or ordinances other than nonmoving traffic violations * * *."

■ A license to operate a motor vehicle on the public highways of this state is the grant of a personal privilege within the exercise of the police power of the state and subject to all reasonable restrictions imposed upon its use. Barbieri v. Morris, Mo., 315 S.W.2d 711, 713 [2].

■ The suspension of a city's operator's license was considered to impose a punishment in City of St. Louis v. Mosier, Mo.App., 223 S.W.2d 117, 120 [5]. The court stated (119 [2]): "[A] license, once granted, is nevertheless not to be revoked arbitrarily, but only in the manner and on the grounds provided by law." Olson v. State of Nebraska, 160 Neb. 604, 71 N.W. 2d 124 [2].

■ Statutory and ordinance provisions imposing penalties are to be strictly construed against the prosecuting authority and are not to be extended by implication. City of St. Louis v. Triangle Fuel Co., Mo.App., 193 S.W.2d 914 [2]; Ex parte Lerner, 281 Mo. 18, 218 S.W. 331, 333 [3, 4]; 60 C.J.S. Motor Vehicles § 20. This is so (Ex parte Lerner, supra), notwithstanding proceedings by municipalities

against violators of ordinances are in the nature of civil actions and not prosecutions for crime in a constitutional sense (City of Webster Groves v. Quick, Mo., 319 S.W.2d 543, 545 [3, 4]). This case does not involve a regulation of traffic on the highway as did respondents' case of Brown v. Raffety, 234 Mo.App. 620, 136 S.W.2d 717, 719 [1].

■ To subject appellant to the suspension of his operator's license, the statute (§ 302.010(4, 8)) requires that he be "adjudged guilty"; that is, "convicted," "at least four times within two years of violating" moving traffic ordinance provisions; and a conviction, so far as here involved, refers to a final conviction, with "a forfeiture of bail or collateral deposited to secure a defendant's appearance in court, which forfeiture has not been vacated," considered the equivalent of a conviction.

It is stated in 2 C.J.S. p. 48 that "adjudged" "has been held to mean adjudicated or judicially determined; decided or determined; deemed; found or decided." Black's Law Dictionary, 4th Ed., "Adjudge." In re Tarlo's Estate, 315 Pa. 321, 172 A. 139, 140, states: "'[S]hall be finally adjudged guilty' means the judgment of a court of competent jurisdiction to pass on the question of guilt * * *; that the word 'adjudged' * * * is the equivalent of 'convicted and sentenced.' * * * There must be not only a conviction, but judgment of the court and the judgment in criminal cases is the sentence. 'Finally adjudged' means convicted and sentenced, and the sentence not appealed, or, if appealed, that the judgment of sentence has been affirmed." See Blaufus v. People, 69 N.Y. 107, 111, 25 Am.Rep. 148. Ex parte Perse, 220 Mo.App. 406, 286 S.W. 733, 735 [8], had for consideration the sufficiency of a justice's record in a criminal case (see § 543.260), and stated: "There must, of course, be enough shown in the record to establish the fact that the court actually rendered judgment and of what it consisted." See also Corder v. Martin, 17 Mo. 41, 43; State v. Carson, 323 Mo. 46, 18

S.W.2d 457 [1]; and, with respect to "adjudication," State v. Huhn, 346 Mo. 695, 142 S.W.2d 1064, 1066 [1]; Kendrick v. Sheffield Steel Corp., Mo.App., 166 S.W. 2d 590, 594 [9].

State v. Townley, 147 Mo. 205, 208, 48 S.W. 833, approves the following: " 'It has generally been held that the word "convicted" includes the final judgment, and that one who has been found guilty by the jury, but has not yet been sentenced, is not a "convicted" person.' " See Neibling v. Terry, 352 Mo. 396, 177 S.W.2d 502 [7], 152 A.L.R. 249; Scott v. American Express Co., Mo.App., 233 S.W. 492 [3], on certiorari, State ex rel. Scott v. Cox, Mo., 243 S.W. 144, 146, 147. In Barbour v. Scheidt, 246 N.C. 169, 97 S.E.2d 855, 856, 858 [6], petitioner sought to set aside an order of the Commissioner of Motor Vehicles suspending his driver's license. Petitioner had been found guilty of two violations of the speed laws, but in each instance "an order was entered continuing prayer for judgment upon payment of costs," and no judgment was imposed. Held, a conviction without the imposition of a judgment was not a final conviction.

■ Appellant was "adjudged guilty" only once by the Municipal Court of Kansas City. All subsequent proceedings were before the Traffic Violation Bureau of the city. This Bureau is an administrative or ministerial agency, under the Clerk of the Municipal Court, created to assist the Municipal Court in the clerical work of traffic cases. There is no contention it is a court. There is no showing that in any of the proceedings before the Traffic Violation Bureau any information was filed, any hearing was held, any bail or collateral deposited to secure appellant's appearance in court was forfeited, any judgment imposing a sentence upon appellant was entered; or that the Traffic Violation Bureau was vested with any such authority. It follows that appellant was not "adjudged guilty" or convicted four times within two years of violating the traffic ordinances of

the city within the meaning of section 302.010(4, 8).

It is not necessary to consider any constitutional issue.

■ The Missouri Rules of Practice and Procedure in Municipal and Traffic Courts, promulgated by the Supreme Court, become effective April 1, 1960. Section 37.50 thereof relates to proceedings before Traffic Violation Bureaus and such bureaus should carefully follow the procedure therein established, especially that portion thereof appearing as paragraph (2) of subsection (c), and reading:

"(2) *Other Offenses*. Within the time fixed by the court, any person charged with any traffic offense, other than a non-moving offense, within the authority of the Violations Clerk may appear by attorney or in person before the Violations Clerk with his driver's license and, upon signing a plea of guilty and waiver of trial, pay the fine established for the offense charged, and costs. He shall, prior to such plea, waiver and payment, be informed of his right to stand trial, that his signature to plea of guilty will have the same force and effect as a judgment of the court, and that the record of conviction will be sent to the Director of Revenue of this state or the appropriate officer of the state from which he received his driver's license."

From what we have said with respect to the record in the instant case, the order of the Director of Revenue suspending the appellant's license should be set aside and the judgment of the trial court should be reversed. It is so ordered.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.