**CITY OF ST. LOUIS, a Municipal Corporation, Plaintiff-Respondent,**

v.

**BRUNE MANAGEMENT CO., Inc., a Corporation, Defendant-Appellant.**

No. 31936.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Rehearing Denied June 21, 1965.

Sigoloff & Sigoloff, St. Louis, for defendant-appellant.

Thomas J. Neenan, City Counselor, Dewitt T. Lawson, Jr., Asst. City Counselor, John J. Fitzgibbon, Associate City Counselor, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This case originated in the municipal court of the City of St. Louis upon an information charging defendant with the operation on September 25, 1963, of a rooming house without a permit or a license, in violation of certain enumerated sections of the City Code. The transcript before us does not reveal the outcome of the prosecution in the municipal court, but in the St. Louis Court of Criminal Correction, to which one of the parties ob-

viously appealed, the defendant was found guilty and fined $50. From that conviction defendant appealed.

The pertinent ordinance is numbered 48338. Section 1 of Division Two of that enactment provides that, "It shall be unlawful to operate a Hotel, Lodging House, Rooming House or Boarding House without first obtaining a permit and license as hereinafter set forth." Section 2 of the same Division requires, "Every operator, before engaging in the business of conducting a * * * rooming house * * *" to file an application for a permit with the Building Commissioner, and subsequent sections make the issuance of a license depend upon obtaining a permit. Section 2 of Division Seven declares that any operator who shall violate any of the provisions of the ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than $25 and not more than $500.00, and each day's violation shall constitute a separate offense.

Division One, Section 2, contains the definitions of various words and terms used in the ordinance. The meaning ascribed to the word "operator" is stated to be:

"OPERATOR—Operator shall include the owner, agent of owner, keeper or person in charge of a rooming house, boarding house, lodging house or hotel."

The term "rooming house" is defined as follows:

"ROOMING HOUSE—A rooming house is a dwelling, other than a hotel, containing one or more rooming units or three or more light housekeeping units; * * *."

No contention is made that the units in question were rooming units; rather, the theory of the prosecution is that they were light housekeeping units. That term is also defined in the ordinance as:

"LIGHT HOUSEKEEPING UNIT—A light housekeeping unit is any dwelling unit other than an apartment as herein defined, when located in a multiple dwelling or rooming house."

This, in turn, necessitates a reference to the definition of the term "dwelling unit." Those words are also defined in the ordinance:

"DWELLING UNIT—A dwelling unit shall mean any room or group of rooms located within a dwelling and forming a single habitable unit with cooking, living, sanitary and sleeping facilities."

The case was submitted to the court, sitting without a jury, upon an agreed statement of facts. The substance of the stipulated facts is that on September 25, 1963, the date mentioned in the information, defendant Brune Management Co., Inc., a corporation, was the rental agent for the premises at 3908 Finney Avenue, in the City, which were occupied by five unrelated tenants. Prior to that date each tenant had separately rented, as a month-to-month tenant, a particular unit (of one or more rooms) from the defendant, upon terms which required the rent to be payable in advance and for which the tenant received a rent receipt. Under the terms of the rental defendant provided heat and hot and cold water for each tenant, but no other facilities. Facilities for living, sleeping and cooking were furnished by each tenant, including all furniture, beds, bedding, stoves, tables and chairs, and household furnishings. The individual units were used by each tenant for cooking, living and sleeping, and gas and electricity were separately metered for each unit and the charges therefor paid for by the tenant thereof to the utility companies. Defendant conceded in the stipulation that on September 25, 1963, it had no permit or license to operate a rooming house.

The dispute between the parties centers on the phrase " * * * forming a single habitable unit *with* cooking, living, sanitary and sleeping facilities" as employed in the definition of a dwelling unit. (Emphasis added.) Defendant points out that the

units were unfurnished at the time it rented them and contends that the mere rental of individual, unfurnished units does not constitute the operation of a rooming house under the ordinance; and that the ordinance makes the rental of such units the operation of a rooming house when, and only when, as a part of the rental, the operator furnishes the facilities for cooking, living and sleeping. The City, on the other hand, takes the position that the word "with" means "having or containing," and argues that it is immaterial who furnished the cooking, living and sleeping facilities; and that " * * * the mere fact that they exist in a multiple dwelling is determinative of whether the units are dwelling units by definition."

■ There are two rules which are peculiarly applicable to the issue presented. The one is that a penal statute or ordinance is to be construed strictly against the prosecuting authority, so that where there is fair room for doubt as to whether the act or thing complained of comes within the scope of its condemnation, such doubt is to be resolved in favor of the defendant. Levin v. Carpenter, Mo., 332 S.W.2d 862, 79 A.L.R.2d 859; Ex parte Lerner, 281 Mo. 18, 218 S.W. 331; State ex rel. Spriggs v. Robinson, 253 Mo. 271, 161 S.W. 1169; City of St. Louis v. Triangle Fuel Co., Mo.App., 193 S.W.2d 914. This is so notwithstanding proceedings by municipalities against violators of ordinances are in the nature of civil actions and not prosecutions for crime in a constitutional sense. City of Webster Groves v. Quick, Mo., 319 S.W. 2d 543; Levin v. Carpenter, supra; Ex parte Lerner, supra. Since a violation of the ordinance is made a misdemeanor and subjects the offender to a fine, Ordinance 48338 is, of course, penal in nature.

■ The other rule is that, as in criminal cases, the burden was on the City to prove that the defendant violated the ordinance. Kansas City v. Wilhoit, Mo.App., 237 S.W. 2d 919; City of Grant City v. Simmons,

167 Mo.App. 183, 151 S.W. 187; Town of Glenwood v. Roberts, 59 Mo.App. 167.

■ Construing the ordinance strictly against the City, as we must, we cannot agree with the interpretation placed upon it by the City. In the first place, if the dwelling unit must contain the facilities mentioned to qualify as such, as the City contends, then it necessarily follows that the defendant did not engage in the business of operating a rooming house at the time it rented the units to the individual tenants because they did not then contain such facilities. Thus what the City is asking us to say, in effect, is that the rental of units which was not a violation of the ordinance when entered into subsequently became a misdemeanor when the third of the tenants moved in his furniture and furnishings. Not only would this be a highly anomalous and absurd result, but it would violate every concept of justice.

Furthermore, other portions of the ordinance demonstrate that it cannot be given the retrospective application for which the City contends. Section 2 of Division Two provides that, "Every operator, before engaging in the business of conducting a * * rooming house * * *" must file an application with the Building Commissioner for a permit. By Section 4 of the same Division he is required to state in his application, among other information:

"g. The number of rooming or light housekeeping rooms intended to be rented or used as sleeping rooms by paying guests.

"h. The maximum number of paying guests proposed to occupy each room.

"i. The number of beds, cots and bunks intended to be used by the guests."

Where, as here, an operator offers for rent units consisting of as many as four unfurnished rooms it would obviously be im-

possible for him to know in advance the number of rooms which a then unidentified "paying guest" would use as bedrooms. It would be equally impossible for him to know in advance the number of persons in the family of such an unknown paying guest, or the number of beds, cots and bunks to be used by the members of the paying guest's family. An operator, before engaging in the business of operating a rooming house, would be in a position to supply such information only where he rented the units furnished with beds, cots or bunks sufficient to accommodate a known number of persons.

Lastly, what is made unlawful by the ordinance is " * * * to operate a * * * Rooming House * * *" without first obtaining a permit and license. The word "operate" is not defined in the ordinance and its ordinary meaning must therefore be ascribed to it. As used in the ordinance it connotes the act of keeping, conducting, running, managing or carrying on a rooming house. It is apparent that one cannot operate a rooming house unless he is in possession and control of the premises. According to the agreed statement of facts, however, the defendant had rented the separate units to the five individual tenants prior to September 25, 1963, the day named in the information. If the five individuals were "tenants," as is agreed, then what was created was the relationship of landlord (on behalf of the owner) and tenant, with " * * * the transfer of the exclusive possession and control of the premises to the tenant; * * *" Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947, 954. The relationship of landlord and tenant is far different from that of proprietor and roomer or "paying guest," as that case makes clear. For as was there said (p. 955): " * * * A tenant has the exclusive legal possession of the premises; he and not the landlord being in control and responsible for the care and condition of the premises." There is nothing in the agreed statement of fact which would support the inference that on the day named in the information the defendant had any right of possession or control over any of the five units, or over the premises as a whole. As far as the stipulation shows, defendant's only obligation was to furnish heat, and hot and cold water to the tenants. Under these circumstances the evidence was not sufficient to show that the defendant on the day named was operating a rooming house within the ambit of the ordinance.

There is an additional reason why the evidence is not sufficient to sustain defendant's conviction. If the word "with" in the definition of a dwelling unit means "containing," as the City contends, then the definition should be read as encompassing " * * * any room or group of rooms located within a dwelling and forming a single habitable unit containing cooking, living, sanitary and sleeping facilities." This would require that the individual unit contain not only cooking, living and sleeping facilities but that it also contain sanitary facilities. However, in the agreed statement of fact it is stated "8. That none of the above named tenants have private or separate bathroom or sanitary facilities." From this it is apparent that none of the units in question contained sanitary facilities, and that they did not fall within the definition of a light housekeeping unit or a dwelling unit even as those terms are interpreted by the City.

For the reason stated the Commissioner recommends that the judgment be reversed, and the defendant discharged.

PER CURIAM:

The foregoing opinion of DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is reversed and defendant discharged.

WOLFE, P. J., ANDERSON, J., and DOUGLAS W. GREENE, Special Judge, concur.