**CITY OF KANSAS CITY, Missouri, Respondent,**

**v.**

**Frederick McGARY, Appellant.**

**No. WD 66338.**

Missouri Court of Appeals, Western District.

Dec. 19, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2007.

Application for Transfer Denied May 1, 2007.

Stephen G. Mirakian, Kansas City, for Appellant.

Llowell Gard, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

Frederick McGary appeals two judgments finding that he violated Section 48–61 of the ordinances of Kansas City, Missouri, in two separate charges by permitting a prohibited nuisance on rental property that he owns. In Case No. 16

CR05359 he was charged with causing or permitting a vehicle without current license plates to be parked in the driveway of the rental property, and in Case No. 16 CR05361 he was charged with causing or permitting a car to be parked on the grass or dirt of the property. Both acts were alleged to be nuisances as defined by Section 48–27(2) and Section 48–28 respectively of the city code of ordinances. McGary contends on appeal that both ordinances defining the nuisance are so vague, ambiguous, and overbroad that he was deprived of due process under the Missouri and United States Constitutions. In his second point he contends that the convictions are not supported by the evidence, are contrary to the weight of the evidence or result from an erroneous application of the law.[1] We do not reach the constitutional issue because McGary did not preserve it by raising it in a timely manner as required by Rule 24.04(b)(2). Although the City failed to present evidence of two elements of the charges, McGary waived that defect by presenting evidence of his own. In his evidence he supplied the missing proof. We therefore find that the evidence supports the convictions and the judgments are affirmed.

## FACTS

Frederick McGary owns and leases real property located within Kansas City, Missouri. On May 16, 2005, a warning letter was issued which instructed him that there was an alleged nuisance code violation (trash) on his property and listing six other categories of nuisances.[2] The notice also warned that if any of the stated categories of nuisances were found to exist on the property after ten days "a summons may be issued." After receiving the letter, McGary inspected the property and delivered a letter to his tenant telling her that he had received notice from the City that cars were parked on unapproved surfaces or not properly tagged.

On June 7, a city code enforcement officer issued two summonses to McGary for violations of Kansas City Ordinance No. 971346, Sections 48–27(2) and 48–28. Specifically, the tickets charged that appellant "[d]id cause or permit a truck without current state license plates to be parked, stored or otherwise located outside a private garage on [his] residentially zoned premises" and that he "[d]id cause or permit a car to be parked on the grass dirt [sic] of [his] premises." Testimony at the trial showed that a city inspector visited the property on June 7, and observed an unlicensed vehicle parked in the driveway of the house and another vehicle parked on the dirt or grass portion of the backyard. Photographs were introduced of those vehicles. After the court's finding of guilt, but before sentencing, McGary filed a motion for new trial and or judgment of acquittal raising the issue of the constitutionality of the nuisance ordinances under which he was convicted.

1. McGary asserts that the appropriate standard of review is under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We disagree because this is not a civil case but rather a quasi-criminal case. *See Strode v. Dir. of Revenue,* 724 S.W.2d 245, 247 (Mo. banc 1987). However it is clear from his point and argument and the city clearly understands that the second point is addressed to the sufficiency of the evidence to support his conviction for violation of the two municipal ordinances. We address, *infra,* the proper standard of review for that contention.

2. The categories included: (1) carcasses of animals; (2) litter, trash, refuse, rubbish on public or private property; (3) wrecked, damaged, demolished, disabled, disassembled, or current unlicensed vehicle(s); (4) (improper) off-street parking of vehicles; (5) rank weeds and noxious plants; and (6) open storage upon residential premises and/or vacant lots.

## DISCUSSION

For his first argument on appeal, McGary asserts that Sections 48–27(2) and 48–28 are constitutionally deficient and deny due process because of their vagueness, ambiguity, or overbreadth. More specifically, he contends that they do not convey a sufficiently definite warning of the conduct necessary to comply with their standards, fail to apprise law enforcement of the proper standard for enforcement where the landlord has taken action to abate the claimed nuisance, punish innocent conduct without requiring any proof of criminal intent, and criminally punish a defendant for failing to do acts that he has no authority to do, such as moving or removing vehicles improperly parked on leased premises.

"Constitutional violations are waived if not raised at the earliest possibility opportunity." *State ex rel York v. Daugherty,* 969 S.W.2d 223, 224 (Mo. banc 1998) (citing *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 907 (Mo. banc 1992)). Although in some situations that point of opportunity may vary, in criminal cases where the statute upon which prosecution itself is based is attacked constitutionally, the earliest point is defined by court rule. Supreme Court Rule 24.04(b)(2) requires that such issues be raised by motion before trial or be waived. No different rule applies in actions for violations of municipal ordinance. Rule 37.74 provides that on a *de novo* appeal from a municipal court conviction the rules applicable to misdemeanors apply. Rule 24.02 is applicable to both felonies and misdemeanors.

McGary did not raise his constitutional objections until after trial. Constitutional challenges first brought at the close of the state's evidence and at the close of all of the evidence have been held to be untimely. *State v. Turner,* 48 S.W.3d 693, 697 (Mo.App. W.D.2001); *State v. Danforth,* 654 S.W.2d 912, 917–18 (Mo.App. W.D. 1983). McGary's constitutional claims are waived because they were not brought in a timely manner.[3] Point one denied.

McGary's second point questions the sufficiency of the evidence to support his convictions. Violations of municipal ordinances are quasi-criminal in nature. *Strode v. Dir. of Revenue,* 724 S.W.2d 245, 247 (Mo. banc 1987). Nevertheless, guilt must be proven beyond a reasonable doubt and the rules of criminal procedure apply. *City of Webster Groves v. Erickson,* 789 S.W.2d 824, 826 (Mo.App. E.D.1990). Furthermore, municipal ordinance provisions imposing penalties are strictly construed against the municipality and will not be extended by implication. *Id.* (citing *Levin v. Carpenter,* 332 S.W.2d 862, 865 (Mo. 1960)). These principles also apply to violations of zoning laws where the municipality seeks to impose some penalty as opposed to civil relief. *Id.* These principles are particularly important where the ordinance seeks to impose vicarious liability on the landlord for a tenant's actions or inaction. *Id.* at 826–27. (holding that a landlord can only be held liable for violations that he has actual or constructive knowledge of and has the ability to control). In order to evaluate the sufficiency of the evidence in this case we need to more fully explore and consider the nuisance ordinances in issue.

### The Ordinance Declares what is a Public Nuisance

Section 48–27(2) declares as a public nuisance "[a]ny motor vehicle without a state

3. Interestingly, Supreme Court Rule 37.51(b) requires that constitutional challenges also be brought before trial in the municipal court. We do not consider whether such a challenge is waived on *de novo* appeal if not first raised in the municipal court.

license plate that is current, and that is parked, stored or otherwise located on [residentially zoned or used premises] other than within a private garage ... unless the vehicle is not required to have current state license plates under state law." No issue is raised by McGary that one of the vehicles found by the inspector on the property on June 7 met that definition.

Section 48–28 declares as a public nuisance "[t]he off-street parking of vehicles other than on a parking space." No issue is raised that the second vehicle observed by the inspector on June 7 was parked in the backyard and not on a driveway or parking space.

### The Declaration of a Nuisance as Illegal

The actual declaration of a defined nuisance as being impermissible is contained in Section 48–61.[4] It provides, inter alia, "It shall be unlawful for any owner or occupant ... **to cause or permit** any nuisance as defined in this chapter **to be created or remain** upon such premises; and it shall be the duty of such owner or occupant **to abate and remove** any such nuisance from such premises." (Emphases added.) There is no allegation or proof that McGary as the landlord caused the nuisance to be created on the property. Thus, the City was required, at a minimum, to prove the existence of a nuisance that the property owner permitted to remain on the property by not abating and removing the nuisance. The City does not dispute that it must also show that the owner has been notified of the alleged nuisance. Actual or constructive notice to the owner is required. *City of Webster Groves,* 789 S.W.2d at 826–27.

### Notice and the Enforcement Procedure

The notice requirements are addressed in Sections 48–62 and 48–63 requiring warning letters of alleged violations (48–62) for certain nuisances or a notice of a violation (48–63) for other types of nuisances. Although these provisions are substantially similar they do have significant differences. Section 48–62 does not specifically require the city to inspect the property for a nuisance. Instead, it allows a notice to be issued when it is based upon some allegation or complaint by, for example, a neighbor. Section 48–63 requires the city to "have determined" that a nuisance exists and then issue a "Notice of Violation" giving the owner fifteen days to abate the specified nuisance.

The Section 48–62 "Warning Letter" requires notice to the owner that the property will be inspected by the city at an unspecified time ("as soon as practicable"). The "Warning Letter" ordinance also provides for notice to the owner that civil remedies or quasi-criminal remedies are available to the city. Under the civil remedy (48–62(5)) procedure, a summons is issued and upon failure to remove the nuisance the city may do so itself and assess the costs as a lien against the property. The civil remedy subsection permits a summons for "the nuisance complained of in the warning letter or any other nuisance" found in the inspection. The notice requirement for the quasi-criminal remedy (subsection (6)) requires the owner to be to told "that failure, neglect or refusal to abate *nuisances listed above*" makes the owner prosecutable and subject to a fine of up to $1000 and/or 180 days in jail. It is unclear whether the term "*nuisances listed above*" refers to the preceding paragraph (subsection 5) dealing with civil remedies or refers to the list of specific

4. Section 48–61 was not specifically mentioned in McGary's constitutional claim in Point one although it seems that much of his argument dealt with its provisions.

prohibited nuisances and code section numbers listed in the first paragraph of section 48–62. In any event there is no specific language in 48–62(6) which would permit criminal prosecution for nuisances not referenced to in the warning letter.

The City's position is that it does not have to prove, as part of its case, that a nuisance for which a criminal prosecution is initiated is the same nuisance upon which the warning letter is based. We disagree. "[O]rdinance provisions imposing penalties are to be strictly construed against the prosecuting authority and are not to be extended by implication." *Levin,* 332 S.W.2d at 865. In *City of Webster Groves* the court refused to construe a nuisance ordinance to impose quasi-criminal liability without actual or constructive knowledge and authority to control an alleged nuisance even though those elements were not explicitly expressed in the ordinance. 789 S.W.2d at 826–27. Because the city in that case failed to prove actual or constructive knowledge of the owner for nuisances created by the tenant (or at least not by the owner), there was insufficient evidence to support the conviction.

We think similar reasoning must be applied here and refuse to construe the ordinance imposing vicarious quasi-criminal penalties to allow for prosecution of some different nuisance than that alleged in the "Warning Letter," unless the owner is shown to have actual or constructive knowledge of the nuisance and has failed to abate it. To do so would seriously bring into play concepts of due process and would also be inconsistent with the nuisance code itself, which imposes a duty to abate or remove and contemplates an opportunity to do so before prosecution. The same principles apply as to whether the city must prove that a particular nuisance existed prior to the time of the warning letter. If it did not, then an owner could be convicted for failing to abate a nuisance that did not exist and/or one that he had no notice of.

In the context of these principles we examine the warning letter sent to McGary and the other evidence at trial to determine whether the evidence supports his convictions beyond a reasonable doubt. The warning letter sent to McGary was apparently based on a citizen complaint. It is undisputed that no city employee inspected McGary's property and determined that any nuisance was present. Also, the letter itself is somewhat ambiguous. One possible reading was that the only subsisting nuisance that was given warning of was "trash." Another possible reading is that it included the improperly tagged and improperly parked vehicles.

In any event, the City presented no evidence in its case in chief that any specific nuisance existed, whether it be trash or vehicles, but only presented evidence that it had a hearsay complaint. The evidence does not permit the inference that any nuisance existed on the property before the warning letter was sent. But McGary made no motion for judgment of acquittal at the close of the City's evidence. Thus, he waived any such claim at that point of the trial. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). McGary then presented evidence. In that situation, in determining the sufficiency of the evidence, we look at all of the evidence in the light most favorable to the City. *State v. Davis,* 753 S.W.2d 25, 27 (Mo.App. E.D.1988).

McGary testified and presented evidence that he understood the warning letter to cover the improperly tagged car and improperly parked vehicle. Upon receiving notice he went to the property and observed the vehicles. He, in fact, introduced a letter he sent to his tenant instructing that the car be properly tagged

and the other car properly parked as required by the city's nuisance ordinance and his lease with the tenant. Thus, he established through his own proof and knowledge that a nuisance did exist before the city inspection and before he was charged and that the nuisance included the vehicle problems. His testimony supplied the two missing and necessary proof elements in the City's case: that, in fact, a nuisance existed of which he had actual or constructive notice and that the nuisance he was charged with permitting and not abating was the same nuisance of which he had knowledge and warning.

McGary also contends, however, that he took reasonable steps to abate the nuisance by sending the letter to his tenants and checking back a few days later and finding, he testified, the vehicles gone. The City presented other evidence, however, from which the trier of fact could find that McGary did not do all that he could reasonably do to remove the nuisance. Whether his efforts were sufficient is not for this court to decide but was a fact issue for the trier of fact. We will not question its determination.

The judgment and convictions are affirmed.

HAROLD L. LOWENSTEIN, Presiding Judge, concurs.

PATRICIA A. BRECKENRIDGE, Judge, concurs in separate opinion.

PATRICIA A. BRECKENRIDGE, Judge, concurring.

It is not necessary for this court to address the issue of what is required in a warning letter before initiating quasi-criminal prosecution against a landlord for a prohibited nuisance on rental property. *City of Webster Groves v. Erickson* requires that the landlord have actual or constructive knowledge of an alleged nuisance even though the requirement of notice is not explicitly expressed in the nuisance ordinance. 789 S.W.2d 824, 826–27 (Mo.App.E.D.1990). There is no requirement in *City of Webster Groves* that the source of actual or constructive knowledge be a writing mailed by the city of Webster Groves. Likewise, the record, here, demonstrates that while McGary had actual notice of the nuisances prior to being charged with permitting prohibited nuisances on his rental property, the actual notice found sufficient by the majority was not based on the City's warning letter. Therefore, any discussion of what is required in the warning letter is dictum.