VICTOR C. HOWARD, JUDGE
The Missouri State Highway Patrol (the State) appeals the judgment of the Adair County Circuit Court. In its three points on appeal, the State complains the trial court erred in excluding one of its exhibits and in issuing a Judgment for Expungement. The judgment is affirmed.
Facts
In October 2017, B.K. filed a Petition for Expungement of Arrest Record under section 610.122, RSMo. He sought to expunge his record of arrest for passing a bad check pursuant to section 570.120, RSMo. The arrest stemmed from an $18 check from October 2009 when B.K. was 19 years old. B.K. worried that the arrest could hinder his work as a financial advisor or hurt his chances of obtaining a series 7 and series 66 license.
B.K. did not remember the specific date of the arrest. He was asked at trial why he did not know the date of his arrest:
Q. Okay. One of the questions -- and this was one of the things that we had talked about. The actual date of the arrest, we were not able to include that in the petition. Why was that?
A. I, you know, I -- I don't recall. I believe it was -- I mean, I didn't really *878 get arrested, really. I mean, technically I did. What happened is, one of the deputies had actually just called me and said, "Hey, did you know you have this case?" And I'm like, "No. Absolutely not. Why would I -- why would I have that?"
And so I just drove to the sheriff's office right then and there and just, you know, paid my fine. And I thought everything was -
Q. Well, when you say you paid your fine, you mean you paid the check and a service fee?
A. Yeah. Correct.
Q. Okay. And you don't recall what that exact date was?
A. No.
Q. And when you contacted the sheriff's office, they couldn't tell you when that exact date was, could they?
A. Not that I recall.
B.K. included in his petition the date a felony stealing case was filed pertaining to the bad check (August 27, 2010) as well as the date it was dismissed after he paid full restitution and fees (September 17, 2010).
The Missouri State Highway Patrol filed an answer objecting to B.K.'s petition on the grounds that B.K. had prior and subsequent misdemeanor convictions. The State claimed B.K. had four convictions for minor traffic violations from 2008, 2012, and 2015. The State argued these prevented B.K. from meeting the requirements for expungement under section 610.122.2(1). The State also argued that B.K. failed to comply with the pleading requirements for expungement because his petition did not include the date of the arrest for which expungement was sought.
The matter proceeded to a bench trial. Attorneys for B.K., the Adair County Prosecuting Attorney, and the Missouri State Highway Patrol appeared at the bench trial. During the trial, the State attempted to prove B.K.'s traffic offenses through documents printed from the Fine Collection Center (FCC). B.K. objected to the admission of the documents, arguing a lack of foundation since they were not authenticated in any way. The trial court conditionally admitted the documents, asking for both parties to submit authorities on the issue after the trial ended.
In its judgment, the trial court found the following: B.K. was arrested for the offense of passing a bad check and a charge was filed on August 27, 2010 in Adair County. The charge was dismissed by the State on September 17, 2010. The arrest was based on false information, and there is no probable cause to believe that B.K. committed the offense. No charges will be pursued as a result of the arrest. B.K. did not receive a suspended imposition of sentence for the offense for which the arrest was made or for any offense related to the arrest.
The trial court further found in its judgment: The State offered certain exhibits in evidence for the purpose of establishing that B.K. had been convicted of one or more misdemeanor traffic offenses. Those exhibits were conditionally admitted by the court pending review of relevant legal authorities regarding their admissibility. The exhibits were deemed inadmissible and were "stricken from the evidentiary record, along with all testimony regarding the same."
The court concluded: The evidence did not establish that B.K. has any prior or subsequent misdemeanor or felony convictions. There is not a civil action pending relating to the arrest or records sought to be expunged. B.K. "is eligible to have such arrest records expunged and it would be in the best interest of justice that expungement be ordered." The court ordered all records of B.K.'s arrest expunged and destroyed or blacked out. It further ordered *879 all records and files in the court to be confidential.
The State now appeals.
Standard of Review
Appellate review of the circuit court's decision following bench trial is governed by Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). Under Murphy , the circuit court's decision will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Id. For factual disputes, the evidence and all reasonable inferences from the evidence are "viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded." Miller v. Gammon & Sons, Inc. , 67 S.W.3d 613, 618 (Mo. App. W.D. 2001) (internal quotation omitted). "Statutory interpretation is an issue of law that this Court reviews de novo." Finnegan v. Old Republic Title Co. of St. Louis , 246 S.W.3d 928, 930 (Mo. banc 2008).
"Remedial statutes, such as expungement of arrest records under § 610.122, should be liberally construed." Doe v. St. Louis Cty. Police Dep't , 505 S.W.3d 450, 455 (Mo. App. E.D. 2016) (internal quotation omitted). "Furthermore, the Supreme Court of Missouri has stated remedial statutes should be liberally construed to promote their beneficial purpose." Id. "When there is ambiguity in a remedial statute, we will construe it in a manner that is consistent with the spirit of the law, resolving all reasonable doubts in favor of applicability of the statute to the particular case." Id. (internal quotation omitted).
Point I
In its first point on appeal, the State argues the trial court erred in excluding the records of the Fine Collection Center (FCC). It says those records are admissible pursuant to section 490.130, RSMo. The State claims the FCC records are records of a proceeding of a court of Missouri contained within a statewide automated record-keeping system established by the Supreme Court of Missouri.
"The trial court has broad discretion in ruling on the admissibility of evidence." State v. Pylypczuk , 527 S.W.3d 96, 99 (Mo. App. W.D. 2017) (internal quotation omitted). "We thus review the trial court's decisions regarding the admission of the evidence for an abuse of that discretion." Id. (internal quotation omitted). "The trial court abuses its discretion if its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. (internal quotation omitted). "The [lower] court's admission of evidence will be sustained as long as it is sustainable under any theory." Id. (internal quotations omitted).
"Generally, [b]efore a document may be received in evidence, it must meet a number of foundational requirements including: relevancy, authentication, the best evidence rule, and hearsay." Id. (internal quotation omitted). "Documents may be authenticated in several ways." Id. (internal quotation omitted). "While the most common method is through direct proof, either by the testimony of attesting witnesses or by proof that the signature on the document is in the handwriting of the purported author, another common method of authentication is compliance with terms of an applicable statute." Id. (internal quotation omitted). "Such statutes are desirable to eliminate the inconvenience and expense of live but generally uncontested foundation testimony."
*880 Id. (internal quotation omitted). "The legislature generally reflects its intent to omit certain evidence from basic foundational requirements with language such as 'shall be admissible as evidence in all courts of this state.' " Id. at 99-100 (internal quotation omitted).
The FCC is established pursuant to section 476.385.3 which states:
3. There shall be a centralized bureau to be established by supreme court rule in order to accept pleas of not guilty or guilty and payments of fines and court costs for violations of the laws and ordinances described in subsection 1[1] of this section, made pursuant to a schedule of fines established pursuant to this section. The centralized bureau shall collect, with any plea of guilty and payment of a fine, all court costs which would have been collected by the court of the jurisdiction from which the violation originated.
"Rule 38 governs the procedure in all courts of this state having original jurisdiction of violations of [specified sections and chapters] and the disposition of violations in a violation bureau established pursuant to section 476.385, RSMo, or in a local violation bureau established pursuant to Supreme Court Rules." Rule 38.01. The definitions for words used in Rule 38 include:
(d) "Court," a division of the circuit court having jurisdiction to hear violations to which this Rule 38 applies;
(f) "Fine collection center," the centralized violation bureau established pursuant to section 476.385, RSMo ;
Rule 38.05.
The State claims that the documents printed from the Fine Collection Center are admissible pursuant to section 490.130, which states in relevant part:
Records of proceedings of any court of this state contained within any statewide court automated record-keeping system established by the supreme court shall be received as evidence of the acts or proceedings in any court of this state without further certification of the clerk, provided that the location from which such records are obtained is disclosed to the opposing party.
(emphasis added). The State argues that the FCC is a statewide automated record-keeping system and that it contains records of court proceedings.
The State's argument fails, however, because the FCC is not a court. They are defined separately in Rule 38.05. Moreover, the statutory scheme governing the *881 FCC makes a distinction between courts and the FCC. Section 476.385.3 describes the FCC as a "centralized bureau." Rule 38.01 differentiates between "courts" and the "violation bureau established pursuant to section 476.385." The FCC is an administrative or ministerial agency. Thus, records of the FCC are not records of court proceedings under section 490.130.[2]
In State v. Ralph , 521 S.W.3d 673 (Mo. App. E.D. 2017), the defendant argued the trial court plainly erred in finding him to be a prior and persistent offender because the State failed to prove prior convictions. Id. at 677-78. The State proved the prior convictions by having the court clerk testify from the Missouri Justice Information System (JIS) records in lieu of physical records. Id. at 678. JIS "is a computerized statewide automated record-keeping system established by the supreme court." Id. at 676 (citing Missouri Supreme Court Operating Rule 1.01-1.10). The Eastern District found that the records were admissible pursuant to section 490.130. Id. at 680. It stated that section 490.130"sets forth the procedure for admitting records stored in JIS." Id. Unlike the FCC, JIS contains records of court proceedings as set forth in Missouri Operating Rule 1. Thus, while section 490.130 applies to JIS, it does not apply to the FCC.[3] See also Pylypczuk , 527 S.W.3d 96 (trial court erred in admitting a record from the Missouri Uniform Law Enforcement System Driving While Intoxicated Tracking System (DWITS) because it lacked authentication where section 577.023.16 provides that DWITS records are sufficient evidence of prior convictions but does not eliminate foundational requirements).[4]
The point is denied.
Point II
In its second point on appeal, the State argues the trial court erred in issuing the Judgment for Expungement. The State says that B.K. does not qualify for expungement under section 610.122 because he has prior and subsequent misdemeanor convictions. In the first point, we found that the trial court did nor err in excluding the evidence proffered by the State to prove B.K. had prior or subsequent misdemeanor convictions. Given that no evidence of such convictions was admitted at trial, the State's second point is denied.
*882 Point III
In its third point on appeal, the State claims the trial court erred in issuing a Judgment for Expungement. It says B.K. failed to satisfy the requirements of section 610.123 because he failed to provide the date of the arrest he wanted expunged. The entirety of its argument in support of this point is contained in a single paragraph wherein the only authority cited is section 610.123. The State argues in its brief that B.K. "failed to offer any exhibits or testimony at the hearing providing the date of the arrest." Given our standard of review, we disagree.
In the light most favorable to the trial court's judgment, the evidence at trial established that a deputy called B.K. and told him about the case filed against him. It was filed on August 27, 2010. B.K. went to the Sheriff's office where he was arrested. This was after the case was filed. While at the Sheriff's office, B.K. learned he could get the case dismissed by paying restitution. He did so. The case was dismissed on September 17, 2012. Thus, B.K. was arrested sometime in the 22 days the case was pending. During oral argument, the State conceded that this range of dates includes the precise date of the arrest. This is sufficient, especially given that expungement is a remedial action that should be "liberally construed to promote [its] beneficial purpose." Doe , 505 S.W.3d at 455.
The point is denied.
Conclusion
The judgment is affirmed.
All concur.

Section 476.385.1 states:
The judges of the supreme court may appoint a committee consisting of at least seven associate circuit judges, who shall meet en banc and establish and maintain a schedule of fines to be paid for violations of sections 210.104,[1] 577.070, and 577.073, and chapters 252, 301, 302, 304, 306, 307 and 390, with such fines increasing in proportion to the severity of the violation. The associate circuit judges of each county may meet en banc and adopt the schedule of fines and participation in the centralized bureau pursuant to this section. Notice of such adoption and participation shall be given in the manner provided by supreme court rule. Upon order of the supreme court, the associate circuit judges of each county may meet en banc and establish and maintain a schedule of fines to be paid for violations of municipal ordinances for cities, towns and villages electing to have violations of its municipal ordinances heard by associate circuit judges, pursuant to section 479.040; and for traffic court divisions established pursuant to section 479.500. The schedule of fines adopted for violations of municipal ordinances may be modified from time to time as the associate circuit judges of each county en banc deem advisable. No fine established pursuant to this subsection may exceed the maximum amount specified by statute or ordinance for such violation.

Though not completely analogous, Levin v. Carpenter , 332 S.W.2d 862 (Mo. 1960) is instructive. The defendant argued his driver's license should not be suspended because he had not been convicted of violating four traffic ordinances. Id. at 863. He "was 'adjudged guilty' only once by the Municipal Court of Kansas City." Id. at 866. The other three alleged violations "were before the Traffic Violation Bureau of the city." Id. The Bureau was "an administrative or ministerial agency, under the Clerk of the Municipal Court, created to assist the Municipal Court in the clerical work of traffic cases." Id. The appellate court found that the Bureau was not a court because nothing suggested "any information was filed, any hearing was held, any bail or collateral deposited to secure appellant's appearance in court was forfeited, any judgment imposing a sentence upon appellant was entered; or that the Traffic Violation Bureau was vested with any such authority." Id. The court concluded that "appellant was not 'adjudged guilty' or convicted four times within two years of violating the traffic ordinances of the city." Id.

There may be other methods to receive documents into evidence, for example the Business Records Act or a court taking judicial notice of its own records.

The State also argues, in one paragraph, that we should apply the relaxed evidentiary rules of small claims court proceedings to arrest expungement proceedings. Their only support for this argument is section 610.123.5 which states that the "supreme court shall promulgate rules establishing procedures ... similar to the procedures" in small claims proceedings. We do not find the State's argument persuasive.